# THE STATE v. LAWRENCE DRUMMINS, Appellant.

### Division Two, June 3, 1918.

1. **SEDUCTION: Sufficiency of Evidence: Promise of Marriage.** The evidence in this case, though sharply contradicted, was substantial in support of each of the four constitutive elements of the crime of seduction of an unmarried woman of previous good repute under the age of twenty-one years, including that of a promise of marriage prior to the seduction and the necessary corroboration of the promise required by the statute.

2. ———: **Period of Gestation: Judicial Notice: Premature Birth: Corroboration of Promise.** Courts take judicial notice that the period of gestation is about ten lunar months or 280 days, because it is a matter of common knowledge; but they cannot take judicial

notice of the viability of a child born 36 days, or even 22 days, short of the ordinary period of gestation. Therefore, in a seduction case, where the child was born 272 days after the alleged promise of marriage, and 258 days after the initial act of sexual relations as stated by prosecutrix and 244 days after the date of conception as fixed by her, there should, in corroboration of the promise of marriage, be proof of a lack of perfect maturity in the child from which the inference of a precocious birth would arise.

3. ————: **Prior Chastity:** Conflict of Testimony. However convincing' the countervailing evidence of a lack of prior chastity of the prosecutrix may be, if there is substantial evidence both pro and con on the issue, its credibility is not for the appellate court to determine.

4. **Argument:** By Prosecuting Attorney: Reference to Defendant. Where defendant did not testify, a statement made by the prosecuting attorney, in the course of his argument to the jury, that "the defendant has not stated anything in the case," excepted to by counsel and unrebuked by the court, is reversible error. [Distinguishing State v. Larkin, 250 Mo. 218.]

5. ————: ————: ————: **Preservation for Review.** Where the official stenographer does not record the argument of counsel, the objectionable statement of the prosecuting attorney may be placed in the record by being embodied by counsel for defendant in his objection thereto; and if the prosecuting attorney did not deny that he used the words attributed to him and the court made no effort to ascertain the exact words used, either at the time or when the bill of exceptions was settled, the objectionable argument will be reviewed on appeal.

6. **Witness:** Impeachment: Proving Statements Contradictory of Testimony. A defendant is not entitled to impeach his own witness and to go further and prove what the witness had positively stated out of court, by merely showing that the witness had made statements directly contradictory of his testimony and thereby he and his counsel had been misled and entrapped into putting him on the stand; but, in order to warrant impeachment in that manner, the witness must go further and by relating wholly contradictory facts become in effect a witness for the adverse side. A mere failure to relate facts to which the party calling the witness has been led to believe he would testify is not sufficient ground for thus impeaching the witness.

7. **Seduction:** Admission of Sexual Intercourse: Proof of Pregnancy and Birth of Child. Evidence of pregnancy of prosecutrix and of the birth of a child is admissible in a seduction case; and where defendant by his counsel in open court has admitted the sexual inter-

State v. Drummins.

course, testimony touching the pregnancy and the birth of the child, though it relates to conduct subsequent to the commission of the crime, is not error, and being competent the manner of proof after such admission lies in the discretion of the trial court.

8. ————: **Proof of Later Acts and Other Crimes.** It is competent for the State to prove by the prosecutrix that long after the seduction under promise of marriage, she and defendant went to another State and registered and for a night occupied the same room at a hotel, and that upon the trip he attempted to bring about an abortion. The evidence being competent, the fact that it tended to prove the commission of another crime did not render it inadmissible.

Appeal from Worth Circuit Court.—*Hon. Charles H. Mayer,* Judge.

REVERSED.

*John Ewing, Du Bois & Miller, Kelso & Kelso,* for appellant.

(1) The court erred in refusing the instruction asked by defendant in the nature of a demurrer. (a) Prosecutrix's evidence shows she was not the pure chaste girl of good repute required to convict defendant. For the defendant to be guilty of the offense charged, prosecutrix must have been of good repute. State v. Howard, 264 Mo. 392; State v. Patterson, 88 Mo. 93; State v. Fogg, 206 Mo. 712; State v. McMahon, 234 Mo. 614; State v. Schenk, 238 Mo. 457; State v. Henderson, 243 Mo. 503. (b) The alleged marriage contract is not sufficiently corroborated to convict defendant. The promise of marriage contemplated by the seduction statute is an unconditioned promise of marriage, under R. S. 1909, Section 5235, which in trials for seduction under promise of marriage requires that the evidence of the plaintiff as to such promise be corroborated to the same extent required of the principal witness in perjury. State v. Spears, 183 S. W. 313; State v. Thomas, 231 Mo. 41; State v. Teeter, 239 Mo. 481; State v. Long, 257 Mo. 207. The promise of marriage must precede the seduction. State v. Eisen-

hour, 132 Mo. 140; State v. Evans, 267 Mo. 646. (2) Defendant having admitted the sexual intercourse with prosecutrix, all testimony admitted and argument of counsel permitted by the court concerning the pregnancy of prosecutrix or the child born was prejudicial to defendant, incensed the jury against him and was error. State v. Palmberg, 199 Mo. 233; State v. Fogg, 206 Mo. 696; People v. Kearney, 17 N. E. 736. (3) The court erred in refusing to permit the defendant to cross-examine his witnesses, and to show that their testimony was at variance with the facts and with what they had recently told counsel for defendant it would be. In excluding this testimony and refusing defendant the right to show his surprise at the acts and statements of the witness, the court committed error. State v. Burk, 132 Mo. 371; State v. Bowen, 263 Mo. 282. (4) One of the most serious errors committed in the trial of the case, and one most fatal to the defendant was the language used by the prosecuting attorney, in his argument to the jury, when he said, "The defendant hasn't stated anything in this case." State v. James and Johnson, 216 Mo. 401; State v. Snyder, 182 Mo. 523; State v. Quinn, 174 Mo. 686; State v. Helton, 255 Mo. 183; State v. Evans, 267 Mo. 179.

*Frank W. McAllister*, Attorney-General, *C. P. Le Mire* and *Henry B. Hunt*, Assistant Attorneys-General, for respondent.

(1) The evidence of pregnancy of the prosecutrix and of the birth and paternity of her child was admissible to corroborate the evidence of her chastity, to establish the date of the seduction, and to identify the appellant as the party who had seduced the prosecutrix. 35 Cyc. 1302 (VIII); 25 Am & Eng. Ency. (2 Ed.) 237, 240; Underhill's Crim. Evidence (2 Ed.), sec. 386; State v. Reed, 237 Mo. 224; State v. Fogg, 206 Mo. 709; State v. Palmberg, 199 Mo. 253. (2) The matter of allowing one to cross-examine and impeach his own witness is largely within the discretion of the trial court. State v. Bowen, 263 Mo. 282; Beier v. St. Louis Transit Co.,

197 Mo. 215; State v. Burks, 132 Mo. 371; Deubler v. United St. Ry. Co., 195 Mo. App. 658; Underhill's Crim. Evidence (2 Ed.), sec. 220; 1 Greenleaf on Evidence (16 Ed.), sec. 444; 5 Jones on Evidence, secs. 851-870. Proper grounds must be laid to authorize the introduction of ex parte statements for the purpose of impreaching one's own witness. Bates v. Halliday, 31 Mo. App. 169; State v. Bowen, 263 Mo. 282; State v. Reed, 89 Mo. 170; Commonwealth v. Thyng, 134 Mass. 191; People v. Bushton, 80 Cal. 160; Underhill's Crim. Ev. (2 Ed.) sec. 235. If the alleged ex parte statements be not denied there is no ground for the introduction of said statements. Deubler v. St. Ry. Co., 195 Mo. App. 658; State v. Bowen, 263 Mo. 282. (3) Objections and exceptions must be saved to argument of which complaint is made and the statements objected to must be set out in the bill of exceptions. Kelly's Crim. Law and Practice (3 Ed.), sec. 402; State v. Whitset, 232 Mo. 511; State v. Harvey, 214 Mo. 403; State v. Clapper, 203 Mo. 549; State v. James, 194 Mo. 279. (4) Where substantial evidence of guilt is presented a peremptory instruction in the nature of a demurrer at the close of the evidence is properly overruled. State v. Long, 257 Mo. 211; State v. Fogg, 206 Mo. 717; State v. Swan, 239 Mo. 728; State v. Wertz, 191 Mo. 578; State v. Mead, 184 Mo. 254.

FARIS, J.—Defendant, tried in the circuit court of Worth County upon the charge of seduction under promise of marriage, was found guilty, and his punishment assessed at a fine of $500 and imprisonment in the county jail for a term of twelve months. After the conventional manner he has appealed.

The record is voluminous, but the facts necessary to an understanding of the several points urged by defendant and discussed in the opinion lie within a moderately circumscribed compass. The young woman in the case resided, when not engaged as a domestic servant, with her mother and stepfather. Her name is not necessary to an understanding of the case, and we shall refer to her simply as the prosecutrix. She was

born, according to her testimony, in the year 1895, and she was seduced (again according to her testimony) on or about the 31st day of January, 1915, when she was slightly less than twenty years of age. Prior to her acquaintance and association with defendant, which began about the latter days of December, 1914, she had kept company for longer or shorter periods with some eleven other young men. From one of these named Orville Johnson, she had accepted long and most assiduous attentions. Numerous letters from her to Johnson were offered, all of which breathed superheated and hectic affection. Some of these letters were written to Johnson right around the time she says she promised to marry defendant. One at least of them was written after the date at which she had promised to marry defendant.

Following the meeting of defendant and prosecutrix, defendant, pursuant to permission asked and given in that behalf, called on prosecutrix on January 3, 1915. He called again on January 10th following, and on this visit he asked prosecutrix to marry him. The suddenness of the situation caused her to take the offer under advisement, which she did for a week. Defendant called again on the 17th day of January, 1915, and prosecutrix being by that time fully advised, agreed to marry defendant. She immediately asked leave of defendant to call in her younger sister, a girl some eighteen years of age, and impart to the latter the important connubial tidings mentioned. When this sister came into the room, prosecutrix told her that she and defendant were going to be married. Thereupon the sister made inquiry of defendant as to the proposed date of the interesting and happy event, and was told by defendant, seemingly without consulting prosecutrix, that it would be "some time in June." In passing this point, it is pertinent and somewhat illuminating to observe that the prosecutrix never made any preparations for this wedding; nor did she ever tell her mother or any other living mortal (save her sister) till after a child was born; nor did she ever

refer to the matter of marriage in any one of the numerous letters which she wrote to the defendant.

Upon the first call of defendant—that of January 3, 1915—he was accompanied by one Don Hagan, who was calling upon the sister of prosecutrix. Illustrative of the rapidity with which the ice of bashfulness was broken, and the remarkable celerity with which acquaintance grew into the most intimate friendship, the prosecutrix relates that she, defendant, Hagan and her sister all rode together, on this first night that defendant had ever called on her, in a single-seated buggy some four miles from her home to the village of Redding, to attend church. On this trip the two girls sat upon the seat of the buggy, and Hagan and defendant sat in the laps of the girls.

Following the promise of marriage, and on the same evening, prosecutrix says defendant tried to have sexual intercourse with her, but she refused to permit the act. He came to see her again on or just after the 31st of January, 1915, this being the fourth call he had ever made on her, and the fourth time he had ever been in her company, and the fifth time he had ever seen her. On the occasion of this fourth call he renewed his importunities and she yielded upon the suggestion that since they were to marry anyway no harm would result. Following this initial act, sexual intercourse between them continued, occurring whenever opportunity offered till sometime about March 4th following. From this intercourse pregnancy resulted. Prosecutrix says the specific act from which pregnancy resulted occurred on the 14th of February, 1915. In September prosecutrix went to Kansas to visit some relatives, and on the 16th day of October, 1915, the child was born.

Through character witnesses testifying generally as to good repute, the prior reputation of prosecutrix for chastity was shown to have been good. Against this the defense offered two witnesses who swore to having had sexual intercourse with prosecutrix repeatedly before the defendant ever saw her. Likewise,

many letters written by her to said Johnson, and to the defendant were offered. These letters abound in obscene references. In one or more of them, prosecutrix makes flippant reference to her condition; likewise in one or more of them, and in one at least which she wrote to Johnson, before she ever met defendant, reference is made to a prior occasion when she either was pregnant or feared that she was. It is fair to say that the prosecutrix denied writing some of these letters. But in the face of the testimony as to the authenticity of all of them, and upon a comparison of their style, construction, spelling and other earmarks, with those conceded to be genuine, denial of their authorship would seem to be well-nigh futile. Since, however, by prosecutrix's denial, the question of authorship of some of the most obscene of these letters became a question for the jury, which in effect they resolved by their verdict, it would subserve no useful purpose to besmirch the books with their contents. We are satisfied to say of these letters that their contents are such as to show conclusively that if prosecutrix wrote them, she had wandered so far from the path of virtue before she ever met defendant, as to render her seduction by him an impossibility.

Prosecutrix says that after discovering her condition about the 4th of March, 1915, she advised defendant thereof, and that they decided to go to Mount Ayr, Iowa, and be married. They did go to Mount Ayr, but upon arriving there defendant, she says, told her that it would be better for them not to marry on account of public opinion, but that he would get her some medicine to cause a miscarriage. They occupied the same room in a hotel that night in Mount Ayr, and on the next day returned home. Subsequently she says, and this is corroborated by one of her letters to defendant, he got other medicine for her, but it failed to relieve her condition. She testifies herself that the defendant is the father of her child, and that she never had sexual intercourse with any other man than defendant.

Defendant did not take the stand in his own behalf, but upon the trial, in making objection to certain testimony which was offered, through his counsel he admitted acts of sexual intercourse with prosecutrix, and the State offered upon its side a letter from defendant to prosecutrix vaguely hinting at marriage. Touching the age of prosecutrix there was no testimony in the case, except her own, and to offset this, defendant offered one witness who testified to the statements of prosecutrix, indicating that she was at the time of the alleged promise of marriage over the age of twenty-one years.

Some three or four witnesses were put upon the stand by defendant and each was asked whether he had had sexual intercourse with prosecutrix. Each of them denied the fact; thereupon the defendant by his counsel, averring surprise, made profert of testimony to the effect that each of these several witnesses had, before they were put upon the stand, told defendant and his counsel that they had had sexual intercourse with prosecutrix, and that in the belief that they would so testify if put upon the stand, they were called as witnesses by defendant. The court refused to permit these witnessess to be impeached by defendant by making the showing which they offered to make of prior, extrajudicial contradictory statements. This is urged as error. More specific reference will hereafter be made to this question, as well as to the evidence which bears upon other points which we find it necessary to discuss in our opinion, wherein all further facts, if any such there be, which will serve to make clear these points, will be found.

I. It is ably and strenuously contended that the evidence is insufficient to sustain the charge of seduction, and that a demurrer interposed thereto below ought to have been sustained. This contention is obviously a serious one, as the statement of the case makes manifest. The sexual intercourse was admitted. The four other constitutive elements of seduction under promise of marriage, to-

Sufficiency of Evidence.

wit, (a) was there a promise of marriage prior to the seduction, (b) was the prosecutrix a woman of previous good repute, (c) was she when debauched under twenty-one years of age, and (d) was she unmarried at the time? are put in question by this contention.

We have no hesitation in saying that there was substantial evidence of all of the above elements of this offense, save and except as to the first. The fact that prosecutrix was unmarried is shown by the proof, and is in no wise questioned. The fact that prosecutrix's age put her under the protecting shelter of the statute was sharply controverted, but the evidence of the fact was substantial, and it became therefore a question for the jury. There was no countervailing evidence of the proof touching the agreement to marry, so we need not trouble ourselves upon that specific point. The point urged upon this specific phase being the alleged lack of that necessary corroboration required by the statute. [Sec. 5235, R. S. 1909.] If the testimony of the sister of the prosecutrix is to be believed, there is sufficient corroboration of the fact that a promise of marriage existed. For this witness says that she was called into a room wherein defendant and prosecutrix were and there informed by the latter, in defendant's presence, that prosecutrix and defendant were going to marry. This witness says further that she made inquiry as to the intended date of the proposed hymeneal rites and was told by defendant that it would occur "some time in June." We have held that a similar admission on defendant's part constituted sufficient corroboration. [State v. Long, 257 Mo. 199; State v. Long, 238 Mo. l. c. 394.] While the facts of this hurried and hectic courtship, as well as the testimony of both the prosecutrix and her sister, bear well-nigh a score of earmarks of incredibility, and while to some sixty or more important and sometimes crucial questions, both these witnessess either refused to answer, or took refuge in an alleged failure of memory, all of these matters and things were for the jury. And while they found the fact differently from the view inevitably arising upon the present show-

274 Mo.—41

ing of the cold record, they yet saw fit to give the fact credence and the trial court approved their conclusion, and since that conclusion is based upon substantial evidence we are without power to interfere. Moreover, one of the letters written by defendant to the prosecutrix, is to a limited extent corroborative. For the above reasons we are constrained to overrule this contention.

II. Cognate to this question of corroboration of the alleged promise of marriage, is also the question as to the date when this promise occurred. Defendant contends with much earnestness that even though there be found substantial corroboration of the fact of a promise of marriage, yet since the child was born on the 16th day of October it must necessarily have been conceived prior to the date fixed by the prosecutrix and her sister as the date of the promise of marriage. This date prosecutrix and her sister fixed as the 17th day of January, 1915, and prosecutrix likewise swore that the initial act of sexual commerce occurred about the last day of January, or the first day of February, 1915, though prosecutrix swears with much certainty that the conception took place on the 14th day of February, 1915. From the former date until the birth of the child 258 days, or less, elapsed, and from the latter date to the same event 244 days elapsed. In passing it may be said that upon the preliminary hearing of defendant both prosecutrix and her sister gave a different date to the promise of marriage, placing it some ten days or two weeks subsequent to that they fixed at the trial. But of course this contradiction was for the jury.

Birth of Child:
Period of
Gestation.

We judicially notice that the period of human gestation is about ten lunar months or 280 days. Here the alleged period of gestation fell 36 days short of that period which we judicially notice. We take notice judicially of the length of gestation, because it is a matter of common knowledge, and not because there may be open to us learned treatises upon the subject which are not convenient to the hand and eye of the

laymen who compose juries. If so it be that a child may be born and live when only 244 days have elapsed between conception and birth, we are of the opinion that some expert evidence of the fact should have been offered. At least there should have been proof of lack of perfect maturity in the child from which the inference of a precocious birth would arise, or might have been deduced by the triers of fact. Likewise, we think that some evidence to eke out the infirmity of judicial notice ought to have been offered, even should we assume that the child was conceived upon the first sexual access, since from this date to the birth of the child only 258 days elapsed. For we cannot take judicial notice of the viability of a child born 36 days, or even 22 days, short of the ordinary period of gestation, no more than we could notice that such period in exceptional cases may extend beyond ten calendar months. [Erickson v. Schmill, 62 Neb. 368.] We conclude that absent proof upon the point supra, the evidence touching the date of the promise of marriage was insufficient.

III. The point of alleged insufficiency of the evidence as to the prior chastity of the prosecutrix resolves itself upon the facts shown into a mere question of credibility. There was much evidence

Prior Chastity. both *pro* and *con*. It was therefore a jury question and, however convincing the countervailing evidence of a lack of the requisite chastity might appear, we are precluded by the jury's finding upon controverted facts from reversing the case upon this ground. We rule this point against defendant.

IV. Defendant did not testify upon his own behalf upon the trial. Therefore, pursuant to the plain mandate of the statute any reference to his failure to testify is forbidden. [Sec. 5243, R. S. 1909.] In the

Remarks of Prosecuting Attorney. course of the argument the learned prosecuting attorney said to the jury that "the defendant had not stated anything in the case." Thereupon counsel for defendant objected to the remark,

stating same to the court in his objection, and asked that counsel for the State be reprimanded. This the trial court neglected to do, merely remarking in answer to the objection that he had not heard what counsel for the State had said. We think this remark of the prosecuting attorney violated both the letter and the spirit of the statute supra. We have held less obvious and pointed references to the failure of defendant to testify, to be reversible error. [State v. Snyder, 182 Mo. 462; State v. Weaver, 165 Mo. 1; State v. Moxley, 102 Mo. 374.] Neither of the above cases, nor the statute itself, is at all involved in the case of State v. Larkin, 250 Mo. 218. In the latter case defendant had testified in his own behalf, and it was under that state of facts ruled that comment upon his failure to cover any fact could be made by counsel for the State in argument, since such a situation does not fall within the statute which expressly forbids comment, where defendant fails to take the stand.

It appears from the record that at the time the objectionable remark was made by the prosecuting attorney the official stenographer did not take it down as it fell from the lips of counsel. It is plain that the stenographer was not keeping a record of the arguments of counsel. The only way therefore in which the remark quoted above got into the record before us was through its being embodied in the objection of counsel for defendant, thus:

"And thereafter, to-wit, in the course of the argument to the jury of Mr. James Anderson, counsel for the State, the following occurred, to-wit:

"Judge Kelso: We object to the statement of counsel and ask the court to reprimand him for saying that the defendant hadn't stated anything in this case.

"The Court: I didn't hear what he did say.

"Counsel for defendant: We except to the ruling of the court."

Learned counsel for the State insist that this showing is not sufficient. In short, it is contended that

the exact language of the prosecuting attorney ought to have been taken down and put bodily into the record, and that it is not sufficient for the purpose of review here to embody the language used in the objection made. We do not agree with this contention. We know from our own knowledge of the practice that nowhere is it the custom in all cases for the official stenographer to take down the entire arguments of counsel. That on the contrary it is the ordinary practice to take down only such parts thereof as are objected to, and it is obvious that the objection made must necessarily come subsequent in point of time to the utterance in the argument of the language to which objection is made. Here the whole matter occurred in open court, and within hearing of the trial judge, and of the prosecuting attorney, who is charged with having uttered the objectional language. If the trial court did not clearly understand the words used, he should have stopped the argument and made inquiry as to the truth of the objection and as to the correctness of the language said to have been used. If the prosecuting attorney was quoted incorrectly, he was present and could have disclaimed the charge of having made the objectionable statement. In the situation presented we must assume that the language which counsel for defendant said was used, was actually used, because, if it was not in fact so used, as charged, the meet and proper time for correction was at the moment of the making of the objection, or, at latest, when the bill of exceptions (from which we quote the excerpt) was settled and signed. But we are not left to reason *a priori* upon this question. It has been held in accordance with the view taken, that the manner here adopted of saving the objectionable argument for review was sufficient. [State v. James et al., 216 Mo. l. c. 402.] In this case at the page cited it was said:

"It is only necessary to say upon that question that in our opinion the improper remarks are sufficiently preserved in the record. Counsel for the appellants made the objection and stated what the re-

marks were. The attorneys representing the State were present. They did not insist before the court that they did not make any such remarks; nor is it disclosed by the record that the court did not fully recognize that such remarks were made, for the court proceeds to rule upon the objections just as made, and in one of the objections it is said, 'The objection is made to the statement of the prosecuting attorney saying' etc. That is a plain, clear statement that the prosecuting attorney made the remark in his address to the jury, and that they were made to the jury is sufficiently disclosed by the record, for the reason that the attorneys representing the State and the court fully recognized that they were made, but evidently felt that it was legitimate argument.''

It follows that the point was properly saved, and in our opinion the contention of reversible error is well taken.

V. Defendant put a witness on the stand and made inquiry of him as to specific acts of sexual intercourse of the witness with the prosecutrix. The witness swore that he had never had sexual intercourse with the prosecutrix. Thereupon defendant's counsel asked the witness whether the latter had not shortly before and outside the court-room told counsel that the witness had had intercourse with prosecutrix. The witness denied making such a statement. Counsel for defendant thereupon offered to prove that the witness had in fact so informed counsel, and that counsel had put the witness upon the stand in the belief in good faith that he would swear to the same facts upon the stand that he had related to counsel before he was sworn as a witness. The court refused to admit this testimony, and defendant contends that such refusal is error. The identical error is urged as to several other witnesses called by defendant, but the case of one of them will serve as a type for all of them.

*Impeaching Own Witness.*

We think the contention must be disallowed. We held in the case of State v. Bowen, 263 Mo. 1. c. 280, that it is not sufficient to warrant a party who puts a witness on the stand, in impeaching such witness (by showing extra-judicial statements contradictory of the testimony of the witness upon the stand), that the witness merely fails, or refuses, to tell the facts which he had theretofore related extra-judicially, or fails to tell all of such facts, but, in order to warrant impeachment in the mode stated, the witness must go further, and by relating wholly contradictory facts, become in effect a witness for the adverse side. In the latter event, the party calling the witness is entitled to show that he was misled and entrapped by the witness's former words and attitude into calling the adverse witness. He is not so entitled, however, when the witness merely fails to relate facts which the party offering him had been led to believe he would relate. [State v. Bowen, supra; State v. Burks, 132 Mo. 1. c. 373; Clancy v. Transit Co., 192 Mo. 615; Beier v. Transit Co., 197 Mo. 215.] We think therefore that this contention must be disallowed.

VI. Upon the trial defendant by his counsel admitted that he had had sexual intercourse with prosecutrix. Having conceded the above fact he objected to any and all testimony touching the birth of the child and the pregnancy of the prosecutrix. For much the same reason he objected to the State's evidence of a trip made by him and the prosecutrix to Mount Ayr, in the State of Iowa, where, according to the testimony of prosecutrix, they registered at a hotel and occupied for one night the same room. All of this occurred long subsequent to the seduction. It is obvious that, absent the admission of defendant by his counsel in open court of the fact of intercourse, evidence of the pregnancy of prosecutrix and the birth of the child would be admissible. This for the reason that such pregnancy would be proof indisputable that some man had had sexual

*Proof of Pregnancy.*

intercourse with her. The birth of the child would likewise be competent in order to show the fact of intercourse and the approximate date of the specific act from which conception occurred, since such date bears an important relation here to the date at which the promise of marriage was made. Did this judicial confession of the fact of intercourse serve to render proof thereof and of the facts of pregnancy and birth of the child, reversible error? We think not. The manner of proof of these facts after the admission of the sexual relations lay thereafter within the discretion of the trial court, and it would seem impossible to bottom reversible error upon the manner in which the court exercised that discretion upon this trial.

VII. What we say upon the point supra likewise applies, we think, to the objection to the State's evidence of the trip to Mount Ayr, Iowa, and to the things occurring thereon. To the latter testimony
**Another Crime.** it was further urged in the objection that this evidence tended to prove the commission of another crime by defendant, and that for this reason it embodied an additional vice not in the first contention. (Referring, mayhap, to a violation of the so-called Federal "White Slave" Act). Absent the admission of sexual intercourse it is clear that this evidence was competent. For the reasons given for this trip tended to prove the intercourse alleged, as well as the promise of marriage, and the efforts made upon the trip to bring about an abortion tended also to prove intercourse and in a way the recognition by defendant of the paternity of the child. Being competent it was properly admitted, and the fact that the circumstances tended to prove the commission of a separate crime was merely defendant's misfortune, and does not in any wise militate against the admissibility of the evidence. For the rule is fairly well-settled that when evidence is admissible for any purpose, in the specific charge upon trial, such evidence will not be excluded merely because it may also tend to

prove the commission of another crime. [State v. Banks, 258 Mo. 1. c. 493; State v. Gordon, 253 Mo. 510.] We are constrained to rule this contention against the defendant.

For the errors noted let the case be reversed and remanded for a new trial consistent with what we have herein written. And it is so ordered. All concur.