504 S.W.2d 233 (1973)
S___ J___ B___ and A___ M___ B___, by their Next Friend, L___ M___ B___ Appellants,
v.
S___ F___ S___, Respondent.
No. KCD 26554.
Missouri Court of Appeals, Kansas City District.
December 31, 1973.
*234 Kranitz & Kranitz, Theodore M. Kranitz, St. Joseph, for appellants.
William Rosenthal, St. Joseph, for respondent.
Before DIXON, C. J., and PRITCHARD and SOMERVILLE, JJ.
SOMERVILLE, Judge.
This court tried filiation proceeding was instituted by an unwed mother and her child (hereinafter referred to as appellants) against the putative father (hereinafter referred to as respondent). The unwed mother and the putative father were the only witnesses called.
The trial court found that appellants failed to sustain the legally imposed burden of proving that respondent fathered the child and entered judgment in favor of respondent.
Appellants' right to relief on appeal rises or falls on a single pointthat the preponderance of the evidence established that the respondent fathered the child. Before reviewing the evidence determinative of this single point, note is taken of certain basic tenets controlling appellate review in court tried cases. Appellate courts review such cases de novo upon both the law and the evidence, giving due deference to the opportunity afforded the trial court to judge the credibility of the witnesses, and the judgment of the trial court will not be disturbed unless clearly erroneous. Rule 73.01(d), V.A.M.R. and Franke v. Franke, 447 S.W.2d 308 (Mo. 1969). The rule of deference is bottomed on sound, practical logic"the advantageous position of the knowing and skilled trial judge to digest the deportment of the witnesses, appraise their attitudes and interpret their inclinations in the cause." [Clinton v. Staples, 423 S.W.2d 1, 3 (Mo. App.1967)].
The rule of deference, when applied to irreconcilable and conflicting testimony, is usually inflexible when the finding of the trial court involves an ultimate *235 issue resting solely on irreconcilable and conflicting testimony, but becomes flexible when the overwhelming weight of the evidence precludes such finding. Creek v. Union Nat. Bank in Kansas City, 266 S. W.2d 737 (Mo.1954) and Sebree v. Rosen, 349 S.W.2d 865 (Mo.1961). Otherwise expressed, the sufficiency of the evidence will be reviewed and, among other things in doing so, a determination made as to whether the rule of deference should be inflexibly or flexibly applied, with the ultimate goal of judicial review being to avoid a clearly erroneous judgment. Rule 73.01(d); Clemens v. Clemens, 235 S.W.2d 342 (Mo.1950); Hearn v. Hearn, 437 S. W.2d 153 (Mo.App.1968). It is, however, implicit in Creek v. Union Nat. Bank, supra, and Sebree v. Rosen, supra, that if the trial court's finding as to an ultimate issue turns solely on irreconcilable and conflicting testimony from witnesses on each side of the issue, then the rule of deference should, extraordinary circumstances aside, be inflexibly applied insofar as appellate review involves determination of the sufficiency of the evidence to uphold the judgment entered by the trial court. Lastly, the prevailing party in the lower court is vested on appeal with all favorable inferences that may be drawn in his behalf. Dill v. Poindexter Tile Company, 451 S. W.2d 365 (Mo.App.1970).
Those facts deemed necessary to rule appellants' single point on appeal unfold as follows. The unwed mother and putative father met while attending high school, she a senior at the time and he a sophomore. Their age differential is approximately two years, the unwed mother being the older of the two. The unwed mother testified that she and respondent started dating in early February, 1970, and continued seeing each other until September 9, 1971. She further testified that during the above-mentioned period of time, she became intimate with the respondent and denied intimacy with anyone else during such period of time. She particularly denied "intimacy" with anyone other than respondent during August of 1971. Additionally, she testified that as a result of her "intimacy" with respondent she became pregnant and gave birth to a daughter on May 13, 1972. According to her testimony, the respondent fathered the child. She first learned of her "delicate condition" approximately three weeks after September 9, 1971, the date she last saw respondent. On discovering her unfortunate situation, she testified that she told respondent she was pregnant. Additionally, she testified she told her "mom" she was pregnant, who, in turn, so advised respondent's mother, who responded by sending her $375.00 "as partial reimbursement for her lying-in".
Respondent's testimony can be characterized as being diametrically opposed to that of the unwed mother regarding the crucial "intimate" facts. Although he admitted having had sexual intercourse with the unwed mother, he denied ever having had sexual intercourse with her after the "middle or latter part" of July, 1971. Particularly, he denied having sexual intercourse with her at any time during August, 1971, or at any time thereafter. He denied that he was the father of the child. According to respondent's testimony, he broke off his relationship with the unwed mother during the "middle or latter part" of July, 1971, because she told him that "sex" with him was "boring her". Respondent denied that the unwed mother ever told him she was pregnant. He further testified that the unwed mother during July and August, 1971, told him that she had been going to another man's home and "going with" still another man during the period mentioned.
The pivotal trial issue, as well as at this stage of the filiation proceeding, was and is whether the unwed mother and respondent were sexually intimate at the time of the child's conception. Courts may take judicial notice that the period of human gestation is 10 lunar months or 280 days. State v. Drummins, 274 Mo. 632, 204 S.W. 271 (1918); JD v. MD, 453 S. W.2d 661 (Mo.App.1970), and Boudinier v. *236 Boudinier, 240 Mo.App. 278, 203 S.W.2d 89 (1947). Stringently applied, the child in question would have been conceived on August 7, 1971, a date subsequent to the time respondent testified he was last intimate with the unwed mother. Parenthetically, it is to be noted that the unwed mother at no time positively testified that she had sexual intercourse at any particular time with respondent after "the middle or latter part" of July, 1971, but, at best, did nothing more than infer such by her testimony that her intimate relationship continued until September 9, 1971; it is to be further noted that she offered no testimony as to the stage of her pregnancy when discovered approximately three weeks after September 9, 1971. It is recognized, medically, and, as well, legally [Rasco v. Rasco, 447 S.W.2d 10 (Mo.App. 1969) and State v. Drummins, supra], that the period of human gestation may vary short of, or beyond, the judicially noticed period of 10 lunar months or 280 days. Be that as it may, a longer or shorter period of human gestation, when such is at issue, will not be judicially noticed and the party having the burden of proof must adduce probative evidence that the period of gestation at issue was longer or shorter; the judicially noticed period of human gestation will not support the imposed burden. State v. Drummins, supra.
In the case at bar the burden rested throughout on the unwed mother as to the core issue of the paternity of her daughter [LD v. JD, 481 S.W.2d 17 (Mo.App. 1972)]. She stood unaided by any presumption as to her daughter's paternity since, unfortunately, the child was conceived out of wedlock. JD v. MD, supra. A calculation based on the child's date of birth and the judicially noticed period of human gestation (10 lunar months or 280 days) results in a conception date of August 7, 1971. Thus, determination of the issue of paternity here, as well as in the trial court, solely revolves around the irreconcilable and directly conflicting testimony of the unwed mother and the putative father as to when they last engaged in sexual intercourse, particularly so since the unwed mother failed to adduce any probative evidence that the gestation period of the child was longer than the period that might be judicially noticed. The trial court found the unwed mother to be a mendacious witness as obviously exemplified by the judgment rendered. This court deems the instant case as one falling within the perimeter of inflexible application of the rule of deference, thus finding no escape from affirming the judgment of the trial court.
Appellants further argue that this case is "strengthened" by the unwed mother's testimony that respondent's mother gave her "$375.00 as partial reimbursement for her lying-in". Evidence of a putative father's recognition of an illegitimate child has probative value. Simpson v. Blackburn, 414 S.W.2d 795 (Mo.App. 1967). In the instant case the unwed mother's evidence was that of recognition on the part of respondent's mother, and, therefore, of doubtful, if any, probative value as to any recognition by respondent of the paternity of the child. More explicitly, the record is void of any evidence that respondent ever recognized the child as his, either to the unwed mother, to his own mother or to anyone else. The record, likewise, is void of any evidence even suggesting or intimating that respondent's mother gave the money in question to the unwed mother at the request of respondent or with his knowledge. The record falls short of containing probative evidence that respondent recognized the child as his. It would be remissful to not again point out that the evidence in question came solely from the unwed mother, concerning whom the trial court stated, "plaintiff was not completely truthful".
This court can not help but sympathize with the child who is the innocent, but real, victim of this unfortunate litigation. If the court's natural inclinations controlled disposition of this appeal, it would be quick to take an emphathic, rather than *237 a judicial, approach to resolve the matter. However, to do so would render "the rule of law" meaningless.
Finding that the judgment of the trial court was not clearly erroneous, the judgment is affirmed.
All concur.