# THE STATE v. SYLVESTER CHAUVIN, Appellant.

### Division Two, November 29, 1910.

1. **INSTRUCTION: Contradictory: Gambling Device: Using Both Disjunctive Or and Conjunction And.** Where the statute forbids any person to "induce, entice or permit any person to bet or play at or upon" any gambling table, an instruction telling the jury that "unless you find that the defendant set up or kept said table, or had charge of the same, and also induced, enticed *or* permitted other persons to play at or upon the same, you will acquit him," is not erroneous, since it is in harmony with the statute.

2. **GAMBLING DEVICE: Employee: Club.** The law of agency is not recognized as a defense to a criminal charge. The law deals with the person who commits the overt act, whether he be acting for himself or as an employee of another. Defendant, who in fact set up, kept and had actual control of the gambling device, cannot escape punishment because of the fact that an intangible club owned the gambling outfit and received the profits from the game and defendant was a mere employee of said club.

3. ————: ————: **Social Organization: Applicability of Statute.** The statute making it a felony to set up and keep a gambling device is leveled against all persons who shall set up or keep any kind of a gambling table or device. There is no exception exempting those who commit the prohibited act

without having any pecuniary interest in the game; nor does it make any difference where the game may be set up or kept, whether in a building used for the purposes of a social organization or in the privacy of the home of the accused. A defendant cannot escape its penalties by showing that members of a social club set up a poker table on their own premises and for pastime or sport indulged among themselves in the game, for small stakes, with no eye to gain or profit to the organization, and that he as an employee of the club had charge of the table and game and received a "rake off" from each pile of chips, cashing those of the holders at the end of the game.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher*, Judge.

AFFIRMED.

*C. Orrick Bishop* for appellant.

(1) It is respectfully and earnestly urged that the evidence in the case fails to bring the appellant within the terms of the statute upon which the indictment is bottomed. The manifest object of this statute (R. S. 1899, sec. 2194) was to restrain and inhibit and punish those who play the arts of the gambler for their own gain and profit, in setting up and keeping (or maintaining) such devices as may tempt the unwary and the prodigal to risk his belongings upon the turn of a card and in inveigling such to "tempt their luck" with a possible and probable result of ruin. It clearly was never intended or designed to punish, as for a felony, the members of a social organization, who, in their own premises and among themselves, as a pastime and for what little sport there may be in it, indulge in cards for small stakes and with no eye to gain or profit to the organization. According to all the evidence of witnesses to the alleged fact, there were no inducements nor enticements held out to any person to play any forbidden game. The table, averred to be a gambling device, etc., was only such as might be found in any buffet or cafe; the cards

were there, as perhaps in the majority of the dwelling houses in St. Louis; the "chips" were there also, as may also be found in many very well regulated households; the opportunity was thus afforded to such members present, with their guests, as were inclined to sit down and play the game, which (according to these witnesses) seemed to have been played as much for amusement and entertainment as for any chance of winning. So far as the evidence shows, no person had any exclusive right or privilege to run a poker game there; the members thus playing used a table or a room for the purpose, and, according to this witness, were willing to pay something for it. "That is what the takeoff was for; I should think that is what it was for." In all of those cases in which convictions under this section have been affirmed by this court (State v. Mathis, 206 Mo. 604; State v. McKee, 212 Mo. 138; State v. Locket, 188 Mo. 415; State v. Hall, 228 Mo. 456; State v. Lee, 228 Mo. 480), the evidence clearly established that the accused was the proprietor and owner of the forbidden device and personally conducted the prohibited game, realizing profit and gain therefrom; setting up the table or device in secret places or locked rooms; enticing persons to come thither and engage in the game; furnishing all the incidentals and controlling and directing the operations by his personal presence, and pocketing what commissions or percentages might accrue from the hands played; and thus satisfying the requirements of the statute as to "setting up and keeping" the game for his own profit and "inducing and enticing" others to play at and upon such devices, and accomplishing the evil which the statute was designed to prevent. Here, on the contrary, the facts were similar to those in the case of Gilmore, 98 Mo. 206. The appellant here seems from the evidence (all the State's own evidence) to have been in no wise responsible for the presence of

231 Sup.—2.

tables, cards or chips; nor to have had any pecuniary
or other interest in the matter; was there as an em-
ployee ("he worked around there," as the witness ex-
pressed it); and so far as permitting people to play
there, he seems to have been in no position to prevent
it; for if he did not serve the voluntary players, some-
one else would have done so, as, in fact, others did do.
To convict him and punish him as for a felony in these
circumstances seems monstrous. If he were guilty of
any offense, upon the evidence against him, he was
only guilty of a misdemeanor, under Sec. 2195, R. S.
1899, as for furnishing "any money or property to any
other person to be bet," etc., and even that would be a
far stretch of the statute. (2) The instructions given
by the court, were clearly unfair to appellant, and
contradictory; in that while the jury were told that,
before they could convict him of the charge mentioned
in the indictment, they must find that the defendant
set up and kept the table mentioned; that the same
was a gambling device, and that he induced, enticed
and permitted other persons to play upon it "whilst
he himself was in charge of setting up or keeping said
table;" they were also told that it was not necessary
to prove that the appellant owned the poker table
mentioned in the indictment, and that it was sufficient
if they believed from the evidence that he had charge
and control of said table.

*Elliott W. Major,* Attorney-General, and *Charles
G. Revelle,* Assistant Attorney-General, for the State.

(1) The evidence is amply sufficient to support
the verdict. State v. Hall, 228 Mo. 456; State v.
Mathis, 206 Mo. 604. (2) Instructions 1, 3 and 4
properly define the law, and have received the sanc-
tion of this court on numerous occasions. State v.
Locket, 188 Mo. 415; State v. Lee, 228 Mo. 480 ; State
v. Rosenblatt, 185 Mo. 114. Instruction two has been

directly approved in State v. Hall, 228 Mo. 456, and State v. Mathis, 206 Mo. 611. (3) Substantially every question presented by this record has received the attention of this court, and has been ruled adversely to appellant's contentions. State v. Hall, 228 Mo. 456; State v. Lee, 228 Mo. 480; State v. Locket, 188 Mo. 515; State v. Rosenblatt, 185 Mo. 114; State v. Mathis, 206 Mo. 604.

KENNISH, J.—On March 29, 1909, the grand jury for the city of St. Louis returned an indictment charging defendant with having feloniously set up and kept a gambling device, to-wit, a poker table. After being arraigned and entering a plea of not guilty, the defendant was put upon his trial, which resulted in his conviction, and the assessment of punishment at six six months' imprisonment in the city jail. Unavailing motions for new trial and in arrest were thereupon filed, after which judgment was pronounced in accordance with the verdict, and an appeal was duly taken.

On the part of the state the testimony tended to prove that the Modern Horseshoe Club had headquarters in a three-story building located at No. 2309 Chestnut street, in the city of St. Louis. In different rooms of this building various persons assembled and played poker for money. The games were played on tables which were kept for that purpose, and, instead of using money in the games, each person desiring to play purchased chips from the person in charge of the place, paying him money therefor. After the game was ended the chips were returned to the person from whom purchased, and the amount represented by them was paid by the "keeper" to the person by whom they were presented. While the game was in progress and on each occasion when the players held certain cards, the person in charge of the house, referred to as the "keeper," would take from the players his "rake off," which consisted of two chips representing five cents.

Regardless of the result of the game, this "rake off" was exacted by the "keeper;" it represented his charge for the use of the table and as the keeper of the game.

From December, 1908, until February, 1909, the appellant was in personal charge of the tables used as above mentioned, and acted in the capacity of "keeper," selling and redeeming the chips, arranging for the games, taking the "rake off" and playing at the game himself whenever it was necessary to have a sufficient number of players for a game.

The game of poker was fully explained by an expert witness, and it was shown to be a game of chance played upon a table with cards, but we do not deem it necessary to set out in detail the evidence upon that branch of the case.

Appellant offered no evidence in his own behalf, but at the close of the evidence for the state asked an instruction in the nature of a demurrer to the evidence and directing a verdict of acquittal.

I. It is conceded in appellant's brief that under the recent decisions of this court the indictment in this case is sufficient, and we are therefore relieved from a review of the action of the trial court in overruling the motion to quash and the motion in arrest of judgment.

II. Appellant complains that the court erred in giving of its own motion the following instructions:

"The court instructs the jury that before you can convict the defendant in this case of the charge mentioned in the indictment, you must not only find that the defendant set up or kept the table mentioned in the evidence, and that the same was a gambling device, but that he induced, enticed or permitted other persons to play upon it whilst he was himself in charge of setting up or keeping said table; and unless you

find that the defendant set up or kept said table, or had charge of the same, and also induced, enticed *or* permitted other persons to play upon the same, you will acquit the defendant of the charge.

"You are further instructed that it is not necessary for the State to prove that the defendant owned the 'poker table' mentioned in the indictment and the evidence. If you find and believe from the evidence that the defendant, Sylvester Chauvin, had charge and control of said table, that is sufficient; provided, you find the facts to be as required and specified in the foregoing instructions designated 'first' and 'second.' "

As set out in appellant's brief the first of the foregoing instructions contains the word "and" instead of the word "or" in the clause "but that he induced, enticed or permitted," and our attention is particularly directed to that fact. An examination of the record shows that the word "or" is used in the instruction as above quoted, and in that respect it is in accord with the language of the statute and the decisions of this court; but had it been otherwise, and as stated by defendant, it is obvious that the error would have been in defendant's favor, by placing upon the State the burden of proving more than the law required.

Although the instruction is as favorable as appellant was entitled to, yet he complains that it authorized a conviction even though the defendant was not the owner of the table, provided that he had charge and control thereof. And it is contended that the instruction should have gone further and "told the jury that if they believed from the evidence that appellant was merely an employee, and as such not responsible for the poker game alleged to have been played nor the paraphernalia of the game and was not himself personally and directly interested in any gain or profit derived therefrom, then they should acquit him." In other words, appellant's contention is that if the jury

believed that the intangible organization known as the Modern Horseshoe Club, owned the gambling outfit and received the profits from the game, and that the defendant was merely an employee, then the defendant should have been acquitted.

The organization, as such,. cannot be guilty of a felony, and it would not do to say that because the club owned the table and received the profits, the defendant, who in fact set up, kept and had actual control of the table, who represented the organization and acted for it, was guilty of no offense. Such doctrine would lead to such serious consequences in attempting to enforce this statute that its unreasonableness is shown in the bare statement. The law does not recognize the doctrine of agency as a defense to a criminal charge. It deals with the person who commits the overt act, and while others may be guilty as accessories, the party committing the prohibited act is not permitted to interpose the defense that he acted only as an agent or employee. [1 Bishop's New Crim. Law, sec. 355.]

We have carefully examined the instructions, including instruction number 2, and find that they correctly declared the law as applicable to the facts in evidence, and were fully authorized by the decisions of this court construing the same statute. [State v. Hall, 228 Mo. 456; State v. Lee, 228 Mo. 480; State v. Locket, 188 Mo. 415; State v. Rosenblatt, 185 Mo. 114; State v. Mathis, 206 Mo. 604.]

III. It is earnestly urged by distinguished counsel for appellant that the evidence failed to bring the defendant within the terms of the statute upon which the indictment is bottomed. In support of this contention it is ingeniously argued that the object of the statute (Sec. 4750, R. S. 1909) was to restrain and punish those who ply the arts of the gambler for their own gain and profit by setting up and keeping such devices as may tempt the unwary to part with their money,

but that it was never intended to punish as for a felony the members of a social organization who on their own premises and among themselves, for pastime or sport, indulge in the game for small stakes, with no eye to gain or profit to the organization.

It was shown by uncontradicted evidence that the defendant was in charge of the table, chips and paraphernalia by means of which gambling was carried on; that he controlled and directed the games and collected the rake off; that no person could participate in the game unless he purchased chips in the amount of two dollars or over; that the betting at times ran as high as $14 and higher, and that the playing continued all night and frequently until daylight the next morning. One witness, who frequently participated in the gambling, when asked to describe the part taken by the defendant in the game, said: "He done like any game-keeper would do. When he got sufficient to play he sold the chips and when it came to the jack pot, he took off two or three chips, and the chips were worth two cents and a half apiece."

There was no substantial evidence tending to prove that persons frequented the Modern Horseshoe Club because of its social features. It appears that there was some kind of a roll supposed to be signed by the members, but the witnesses who admitted having taken part in the gambling there, were uncertain as to whether or not they were in fact members of the club. They had not paid any dues or membership fees, and one of them who had visited the place regularly for a number of years, when asked by counsel for defendant if he didn't go to the club for the purpose of enjoying himself, naively answered, "We went there to enjoy ourselves and try to win."

Under these facts there can be no doubt that the defendant with others was conducting a common gambling resort, and to call it a social organization where games were indulged in for pleasure and pastime

is but a thin disguise to conceal the mercenary purpose of those who were preying upon the weaknesses of their fellows. But let it be assumed, as contended by appellant, that the defendant was not the proprietor of the place; that he was there as an employee; that he had no pecuniary interest in the table at which he presided as game-keeper, or even that the games were played as much for amusement as for the chance of winning; neither of these facts nor all of them combined would constitute a defense to the felony charged.

The statute under which the defendant was convicted is leveled against persons who shall set up or keep any kind of a gambling table or device. There is no exception exempting from its provisions those who shall commit the prohibited act without having any pecuniary interest in the game; nor does it make the least difference where the gambling table may be set up or kept, whether in a building used for the purposes of a social organization or in the privacy of the home of the accused. All that is required to constitute the offense is that the defendant at the time and place mentioned set up, kept or maintained any kind of a gambling table or gambling device adapted, devised or designed for the purpose of playing any game of chance for money or property, and that he induced, enticed or permitted some person or persons to bet or play at or upon the same.

The evidence clearly established the guilt of the defendant, and finding no error in the record the judgment is accordingly affirmed. *Gantt, P. J.,* and *Burgess, J.,* concur.