THE STATE v. JASPER CROW, Appellant.—84 S. W. (2d) 926.

Division Two, July 11, 1935.

*Frank W. Jenny* and *Hutchison & Hutchison* for appellant.

*Roy McKittrick,* Attorney General, and *Wm. Orr Sawyers,* Assistant Attorney General, for respondent.

WESTHUES, C.—Appellant was convicted in the Circuit Court of Gasconade County, on a charge of grand larceny, and sentenced to serve three years' imprisonment in the penitentiary. From this judgment he has appealed.

The alleged theft was committed in Washington County. The charge against appellant was filed in Franklin County, Missouri, on the theory that the property was transported into said county. A change of venue brought the case to Gasconade County where it was tried.

The evidence disclosed the following state of facts: The prosecuting witness, Audis Hulsey, lived on a farm in Washington County. In the spring of 1932, he permitted his cattle to be at large on the free range. The evidence disclosed that Washington County did not have what is commonly called a stock law. Hence, live stock was generally permitted to roam about unrestrained. Appellant was the owner of about 1700 acres of land located in Washington County near the land of Hulsey. Appellant dealt extensively in live stock, generally having on hand a large number of cattle.

About June 1, Audis Hulsey missed five head of cattle. According to the testimony of a witness, named Wilbur Lahmann, who lived in the same neighborhood and was engaged in trucking live stock to market for hire, appellant came to the home of the witness on Sunday, May 22, 1932, and informed him that he, appellant, had "some stuff" he could not handle and needed help. Lahmann agreed with appellant to take a load of cattle to East St. Louis, Illinois, that night. Lahmann further testified that he recognized the cattle as belonging to Hulsey and knew they were stolen. The cattle, five in number, were described in detail, and there was no dispute about the fact that Lahmann had taken five head of cattle, belonging to Hulsey, to the East St. Louis stockyards on May 23, 1932. Lahmann testified defendant, Jasper Crow, accompanied him from appellant's farm, where the cattle were loaded on a truck, to the stockyards; that in payment for the cattle appellant received and cashed a check in the sum of $90, made payable to a fictitious person; that he, Lahmann, received $20 for his part of the deal; that appellant and the witness returned to Washington County in the truck on the evening of May 23. Lahmann testified that on their way to the stockyards with the cattle they drove from Washington County to Highway No. 66, thence to St. Louis, passing through Franklin County, Missouri.

Lahmann and appellant were seen at the stockyards on the early morning of May 23, by Grandvill Eye and Gene Kimberlin, both of whom lived in Washington County and were acquainted with Lahmann and appellant. These men happened to be at the stockyards at the time with a truck load of stock. They were called as witnesses and testified that as they arrived Lahmann was in the act of placing the end gate on the truck and on seeing them immediately drove away; that appellant was near the truck, spoke to the witness and immediately departed. Lahmann testified that when Eye and Kimberlin arrived appellant stated to him, ''Get the hell out of here,'' and appellant did not get on the truck but met him later. Eye and Kimberlin noticed a number of cattle in the stock pen answering the description of the stolen animals.

Appellant denied his guilt and offered evidence of an alibi. Witnesses testified that appellant attended a neighborhood basket dinner on Sunday, May 22; that he was there all day and, therefore, could not have been at the home of witness Lahmann arranging for the taking of the cattle to St. Louis. Appellant testified that he drove to St. Louis on the early morning of May 23, in his car accompanied by a man named Charles Miller; that he and Miller visited the stockyards for the purpose of buying some cattle; that while there he saw Lahmann and also witnesses Eye and Kimberlin. Appellant was corroborated in this evidence by Charles Miller who testified substantially, as did appellant, about the trip to St. Louis. The constable at Sullivan, Missouri, also corroborated appellant. This constable testified that he was on the lookout for stolen cattle on the night of May 22, and saw Lahmann pass through Sullivan with a truck load of stock and also saw appellant pass through there in his car on the early morning of May 23; that he was acquainted with both Lahmann and appellant, recognized them as they drove through and spoke to them.

The reputation of witness Lahmann for truth and veracity and as a law abiding citizen was thoroughly impeached by his own admissions of violations of the law, as well as by the evidence of numerous witnesses to the effect that Lahmann's reputation for truth and veracity was bad. A number of witnesses testified that appellant bore a good reputation prior to the time the charge of larceny was filed against him. On the other hand the State introduced numerous witnesses who testified that prior to that time appellant's reputation for honesty and veracity was very bad. The State also offered evidence in rebuttal that appellant did not attend the neighborhood basket dinner.

Appellant earnestly insists that he could not be legally indicted in Franklin County, Missouri, because the statute Section 3379, Revised Statutes 1929 (Mo. Ann. Stat., p. 3074), provides that when

property is stolen in one county and brought into another, the offender may be indicted for such larceny in the county into which such stolen property is brought. It is argued that the term ''brought into'' cannot be construed to cover a situation, as in this case, where the stolen property was transported through Franklin County en route to East St. Louis, Illinois.

We believe appellant has misconceived the meaning and purpose of the statute. Its primary purpose, as we construe it, is to bring to justice those guilty of larceny who flee with their ill-gotten goods. If a thief transports the stolen property from one county to another he is guilty of an offense under Section 3379, supra, the same as if he had stolen the property in the county to which he brought it. The State may, therefore, indict and prosecute the offender in any county into which the culprit has brought the property. In order to have passed through Franklin County the appellant must have first entered the county and then left its boundaries. In other words appellant brought the property into Franklin County and passed through and out of the county on his journey to St. Louis. Suppose appellant had been apprehended in Franklin County with the stolen property in his possession, could he have then successfully defended himself against a charge of larceny because he did not intend to remain in, but only to pass through the county? We think not. In State v. Williams, 147 Mo. 14, 47 S. W. 891, it was correctly said:

''It does not matter that the steer was first stolen in Texas County, and afterwards taken into Pulaski County, inasmuch as each transportation of stolen property from one county to another is a fresh theft.''

The precise point now under discussion was not present in the Williams case, but we think the above to be a correct declaration of the law. We find a similar expression in State v. Smith, 66 Mo. 61, l. c. 62, 63, as follows:

''And we think there exists as little ground of objection relative to the second instruction given for defendant, that the jury should acquit unless the property were stolen in Greene County. If as is the case, each asportation into another county, is a fresh theft, then there was no conflict between this instruction, and the third one for the State, nor was there any lack of evidence to support the verdict, although that evidence showed an original larcenous taking in Laclede County, and a subsequent asportation into the county of conviction.''

Error was assigned to the action of the trial court in permitting the prosecuting attorney to state to the jury that the case had been transferred to Gasconade County on the application of appellant for a change of venue. Such a statement was improper and entirely unnecessary. A defendant feeling that he cannot have a fair trial in

the county where the charge is filed has a right, under the law, to apply for a change of venue. The fact that he does so should not militate against him in the new forum and, therefore, should not be referred to in any manner during the trial. When appellant's attorney objected to the statement the trial court ruled that it was improper. No request was made for a reprimand. The record does not disclose an adverse ruling on the objection. Appellant is, therefore, in no position to complain.

Error was assigned because the trial court refused to permit appellant, on cross-examination of State's witness Lahmann, to ask if the witness had not admitted to certain named persons that he, the witness, had burned a schoolhouse and if he had not asked one Hulsey to help the witness load stolen cattle. It was contended, by appellant, that the witness would have answered both questions in the affirmative and, therefore, would have been discredited as a witness before the jury. It would have been entirely proper for the trial court to have required the witness to answer the questions. Any witness may be impeached by his own evidence and, therefore, may be cross-examined for that purpose. The extent of this cross-examination rests largely within the discretion of the trial court. It should not, however, be too limited, and the adverse party, as long as he is in good faith, should be permitted, within proper bounds, to ask questions concerning the conduct of the witness, which may in any way be considered to his discredit. [Rogers v. St. Avit, 60 S. W. (2d) 698, l. c. 700; State v. Hersh, 296 S. W. 433, l. c. 436(10).]

The witness Lahmann admitted, on cross-examination, that he had been convicted four times. It was also shown that at the time of the trial he was an involuntary resident of the Franklin County jail. He also admitted, without apparent hesitation or embarrassment, that he transported the cattle knowing them to have been stolen, and that he had on other occasions knowingly transported stolen property. The only excuse attempted to be offered was that he needed the business. In addition to this appellant introduced numerous witnesses who testified Lahmann's reputation for truth and veracity was very bad. We are of the opinion that had the trial court permitted the witness to answer the questions and had he answered them in the affirmative it could have added but little to blacken his character because it was already blackened by his own admissions and the testimony of other witnesses. Under the circumstances we deem the action of the trial court nonprejudicial to appellant.

It is contended that the trial court erred in not giving a cautionary instruction as to the weight and value of the testimony of an accomplice. No such instruction was offered. The weight to be given the evidence of an accomplice is collateral to the main issue

and the trial court is not required of its own motion to instruct thereon. [State v. London, 295 S. W. 547, l. c. 549 (2); State v. Park, 16 S. W. (2d) 30, l. c. 33, 322 Mo. 69.]

A number of assignments of error in the motion for a new trial were not briefed by appellant. They have been examined and found to be without merit. One of these assignments challenges the sufficiency of the evidence to sustain a conviction. The facts above enumerated disclose that sufficient evidence was adduced by the State to sustain a verdict of guilty. Appellant's evidence of an alibi was contradicted by the evidence of the State. The truth of appellant's explanation of his presence with or in near proximity to witness Lahmann and the truck at the stockyards was a question for the jury.

The information, verdict and other matters in the record proper disclose no error. The judgment is affirmed. *Cooley* and *Bohling*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.