STATE v. ROY RIZOR, Appellant.—No. 38191.—171 S. W. (2d) 710.

Division Two, June 7, 1943.

*Collins & Osborn* for appellant.

138

*Roy McKittrick,* Attorney General, and *Covell R. Hewitt,* Assistant Attorney General, for respondent.

LEEDY, P. J.—Defendant appeals from a judgment of the Circuit Court of Cedar County convicting him of feloniously setting up and keeping a gambling device, to-wit, "a crap table, otherwise known as a dice table," in violation of Section 4675 Mo. R. S. A. The case originated in Vernon County but was transferred on defendant's application for a change of venue. Punishment was assessed [711] by the jury at imprisonment in the penitentiary for a term of two years, and defendant was sentenced accordingly.

One of the assignments is that relating to the sufficiency of the evidence, which was challenged by demurrer at the close of the state's case. The court declined to give a peremptory instruction, and defendant stood on his request therefor, and introduced no evidence.

The testimony offered by the state was to the following effect: At about 2 o'clock P. M., on April 20, 1940, the date in question, the Sheriff of Vernon County and his deputies raided a billiard hall on East Walnut Street in Nevada, and found nine men, including defendant, playing poker in a back room. They also found in said room a large dice or crap table. It was covered with green cloth, and was

marked off or lettered. There was a cut out place, or indentation at one end "for the man operating it to stand, and the rest of the way around the table was for the players." A rake or dice stick was on the table, and in a drawer of the table the officers found chips, a dice cup and dice. No one was playing at the dice table at the time of the raid. The table and paraphernalia above described were seized by the officers, and were introduced in evidence. All of said players were arrested, charged with gambling in having played poker, entered pleas of guilty, and were sentenced for that offense. All of the men present in the room at the time of the raid testified with the exception of defendant Rizor, Henry Orrence, and Robert Cargill.

One of them, Otto Shepley, testified that he was a frequenter of the place; and was playing poker therein at the time of the raid, that he saw the dice table, and that on the day in question, and before the raid, he saw two men playing dice thereon, one of whom he identified as Orrence and the other as a stranger; that he "saw the chips change hands there . . . from the box Roy Rizor was handling to some of the players," and as nearly as he could see it, "it looked as if it was money"; that defendant was standing in the cut out portion of the table raking in the dice; that before the game started, he heard defendant say he would like to start a crap game, and a short time thereafter the game started; that he had been in the place a week previously, at which time the dice table was not there. The witness admitted that some twenty-five years before, when he was 16 years of age, he was convicted (the nature of the offense was not shown) and sentenced to the reformatory.

Witness Moberly testified, somewhat reluctantly, that he shot craps on the table with Orrence on the day in question, and that he, the witness, lost, and Orrence won. He further stated he did not know who operated or had charge of the game, but said defendant was present.

R. D. ("Kiddo") Mason, one of those in the raid, testified he and Bill Shafer had been running the poker room some three or four months, and that about a week before April 20, 1940, defendant "came in" with them in the operation of said poker room and thereafter the three of them conducted it; that the dice table was brought in in his absence; that he knew it was "brought up there, that is all." When pressed for an explanation about how it happened to be brought up there, the following occurred:

"Q. Do you know anything about how it came to be brought up there?

A. Well, we was going to use it in there.

Q. . . . Who do you mean—'we'?

A. Well, me and that fellow that was in with me [Shafer] and Roy [defendant] there. . . . We was going to put in a dice game.

Q. Who was going to put in a dice game?

A. All three of us."

The witness further testified the table had been "brought up there" during the week before the raid.

Bill Shafer corroborated his partner, Mason, and testified defendant came to him, and "wanted to come in with . . . the poker game, and wanted to bring a dice table along"; that he talked it over with his partner, Mason, but before reporting back to defendant, the latter had workmen change the partitions in the building, and made the room larger; that he was surprised to find the workmen there, and stated "they had stole a march" on him, to which defendant replied he "thought it was all right—the arrangements, it was all right. Q. What arrangement? A. Why, to put a dice table in."

M. S. Goodon, who conducts a billiard hall and cigar stand in Nevada, testified that sometime prior to the raid he sold some second-hand or used billiard cloth to defendant and "Kiddo" Mason, and while he could not say that the cloth on the dice table in question was the same cloth, it was [712] similar to the one so sold by him, and "This looks the same as the cloth I sold him."

The carpenter testified he changed the partitions at the direction of defendant and Mason, and that he was paid by the latter.

The state's attempt to show defendant caused the table to be lettered by a local sign painter was not entirely successful. The painter testified he did the work one night between 10 P. M., and 6 A. M., the next morning; that the work was done in the room which was raided, and that defendant "was in and out of there, yes." He further testified that he was never paid for the work, and that he had asked Rizor to pay him, the witness adding, "As I understand it, he always pays his debts."

It is evident from the foregoing statement that the state made a case for the jury, and there was no error in denying the peremptory instruction requested by defendant. [State v. Cannon, 232 Mo. 205, 134 S. W. 513; State v. Souva, 234 Mo. 566, 137 S. W. 873; State v. Williams (Mo.), 273 S. W. 1069.]

Defendant's motion to quash the amended information (because filed out of time, and without leave) was overruled, and error is assigned thereon. Said motion is not preserved by the bill of exceptions, and in such situation, under repeated holdings, the action of the trial court will not be reviewed. [State v. Settle, 329 Mo. 782, 46 S. W. (2d) 882; State v. Sollars (Mo., banc), 200 S. W. 1052; State v. Neely (Mo.), 56 S. W. (2d) 64.]

Complaint is made that the court erred in admitting the dice table as an exhibit because prejudicial to defendant. "On a trial for keeping a gambling house, implements employed in playing illegal games are always admissible, if found in the possession of or properly identified and connected with the accused." [Underhill's

Criminal Evidence, 4th Ed., sec. 751.] See, also, State v. Potts, 239 Mo. 403, 144 S. W. 495. A somewhat similar complaint is made respecting the admission of, and the prosecutor's argument concerning, a pair of dice which the evidence showed were "crooked," in that the spots were so arranged that it was impossible to throw a seven. The ground of the complaint is that it was not shown "defendant ever had possession of or even had seen said dice, or permitted anyone to play with them for money." It is true no witness testified directly to the fact that defendant had said dice on his person, but the difficulty with the contention is that it overlooks the proof that said dice were found in a drawer of the table with the dice cup, and overlooks the other circumstances outlined in the statement of facts touching defendant's connection with the setting up and operation of said table. Moreover, the argument complained of is not preserved, nor is it shown that defendant asked that a mistrial be declared on account of said argument. What has been said last above applies also to the assignment that the "court erred in not severely reprimanding the prosecuting attorney for injecting his personal feelings into his final argument."

There was no error in permitting the witness Coberly to demonstrate to the jury the position assumed at the table by the "banker" of the game, which was in the cut out or indented portion. The same thing may be said as to his explanation of the function of (and necessity for) the dice cup, and his statement that no combination of numbers on one of the pairs of dice he identified would make a seven.

In his brief defendant argues two propositions concerning the instructions: First, that there was conflict between state's instruction #5 and defendant's instruction #5A; and, second, the court erred in failing to instruct as to the weight to be given the testimony of an accomplice. The first of these is not open for review because not properly raised by the motion for new trial, its allegations in that regard being merely that "the court erred in giving instructions asked by the state numbered . . . 5," which is too indefinite. As to the failure to instruct regarding an accomplice's testimony, we observe the record wholly fails to show that any such instruction was asked by defendant. Such matter being collateral to the main issue, and in the absence of a request therefor by defendant, the court was not required to instruct thereon as a part of the law of the case, under the statute, Sec. 4070 Mo. R. S. A. [State v. Payne (Mo.), 147 S. W. (2d) 435; State v. Mansker, 339 Mo. 913, 98 S. W. (2d) 666; State v. Crow, 337 Mo. 397, 84 S. W. (2d) 926; State v. London (Mo.), 295 S. W. 547.]

Finding no reversible error in the record, the judgment is affirmed. All concur.