226 S.W.2d 593 (1950)
STATE
v.
MAHAN.
No. 41668.
Supreme Court of Missouri, Division No. 2.
February 13, 1950.
*594 J. Ben Searcy, Eminence, for appellant.
J. E. Taylor, Attorney General, Philip M. Sestric, Assistant Attorney General, for respondent.
BARRETT, Commissioner.
Luther Sanders had a Hampshire sow and seven black Hampshire shoats running at large on the range in Shannon County. They were running around the "old Saddler Pond," halfway between Winona and Eminence on old Highway 19, about a mile from Luther's home. Luther saw them on Sunday, December 11, 1948. On the following Wednesday six of the shoats were missing. A spool of woven wire had been tied to one end of an old pigpen and rolled around the trees to make a corral and there were dual-wheel truck tracks near the pen. Raymond Mahan was charged with the theft of the six shoats. A jury found him guilty and assessed his punishment at five years in the penitentiary.
In his motion for a new trial Mahan contends that the trial court should have sustained a demurrer to the evidence because the state "failed to prove that the hogs alleged to have been taken were the property of the said Luther Sanders" or that he "took the property of Luther Sanders." In substance the appellant contends that the jury could not find him guilty and that the court should have so directed because the state failed to prove the necessary essentials of Luther's ownership of the shoats alleged to have been stolen and their identity as the shoats set forth in the information. 52 C.J.S., Larceny, §§ 95, 99, pages 905, 914; State v. Lease, Mo.Sup., 124 S.W.2d 1084. But in addition to Luther's testimony that the six shoats were missing and could not be found, Mahan's accomplice, Eual Atchison, who was serving a two-year sentence for the theft of the shoats, testified that he was with Mahan and that on the 15th day of December, 1948 they drove Mahan's Chevrolet truck out to "the old Saddler field," loaded up the six head of shoats, took them to West Plains and sold them for $35 and divided the money. He said that he did not know whose shoats they were but they were not Mahan's and they did not belong to the witness. Eual's younger brother, Emmitt Atchison, testified that he also went along and that Mahan and Eual stopped at the old Saddler field and "loaded those hogs" from an old wooden pen, took them to West Plains and sold them. Luther described the six shoats as "black hamps," weighing forty to fifty pounds. Near Bartlett, on the road to West Plains, Mahan's truck ran out of gasoline, so Emmitt said, and they walked up to Mr. Webb's filling station. Mr. Webb recognized Mahan and subsequently remembered their stopping at his station. He saw six shoats in the truck, "they were, I figure about 50 pounds, Hampshire shoats. The reason I say `Hamps' they were smooth trim black hogs that type. Generally *595 black." The man who operated the scales at West Plains and the man who purchased six shoats on December 15, 1948, remembered that two boys in a Chevrolet truck with "dual-wheels" had "six Hamp shoats," black shoats, and that Mr. Pliler bought them for $35. These witnesses could not identify Mahan, one of them thought he recognized Eual, but Eual testified that he did all the negotiating in selling the shoats and he said that he thought he recognized one of the witnesses from West Plains as one of the men he talked to when he sold the shoats. While some of the evidence as to the identity and ownership of the shoats is circumstantial it was sufficiently substantial for the jury to find that they were Luther's shoats and that the appellant and Eual stole them. State v. Kelley, Mo.Sup., 106 S.W.2d 486; State v. Smith, 339 Mo. 950, 98 S.W.2d 657.
Because the state used Eual Atchison, an admitted accomplice, as a witness it is urged that the appellant is entitled to a new trial because "the Court failed to give an instruction to the jury as to the testimony of an accomplice." It is his contention, apparently, that such an instruction was compelled, whether requested or not, as one of the "questions of law arising in the case" necessary for the jury's information in giving their verdict. Mo.R.S.A. § 4070; 23 C.J.S., Criminal Law, § 1227, page 785. It should be carefully noted, however, that this is not an instance of the defendant's having been convicted upon the uncorroborated testimony of an accomplice. State v. London, Mo.Sup., 295 S.W. 547. In this case in addition to the accomplice there was also the testimony of Mr. Webb and the men from West Plains as well as the testimony of Eual's brother, Emmitt, even though he also may have been guilty of some offense in connection with the theft of the shoats. An instruction concerning a rule of evidence, here as to Eual's credibility as a witness and the nature and effect to be given his evidence, is cautionary and collateral to the principal issue involved in the case and does not concern one of the questions of law necessary for the jury's information in giving their verdict. State v. London, supra. There was no request for or offer of such an instruction by the appellant and, since it was collateral to the main issue the trial court was not bound on its own initiative to instruct upon the subject. State v. Rizor, 351 Mo. 137, 171 S.W.2d 710; State v. Crow, 337 Mo. 397, 84 S.W.2d 926; State v. Payne, Mo.Sup., 147 S.W.2d 435.
It is also urged that the court prejudicially erred in refusing to discharge the jury because of an improper question by the prosecuting attorney to Eual, "if the defendant had not lived with another woman." However, the question was propounded in these circumstances: On cross-examination defendant's counsel asked Eual these questions:
"Q. You are a relative to the defendant? A. Yes, sir.
"Q. He is a married man and has children? A. Yes, sir.
"Q. How many children? A. Three I think."
Then the prosecutor said:
"Q. Mr. Atchison, is he living with his wife? A. He wasn't at that time.
"Q. Did he have someone else he was living with?"
Defense counsel then objected to the question, asked that counsel be reprimanded and that the jury be discharged. The court promptly sustained the objection and instructed the jury to disregard the question. In doing so the court said: "It is an improper question and should not have been asked." The court refused, however, to discharge the jury. In the circumstances and in view of the court's prompt action it may not be said that the court abused its discretion or that the occurrence was so prejudicial as to require a new trial. State v. Taylor, 293 Mo. 210, 216, 238 S.W. 489; State v. Davit, 343 Mo. 1151, 125 S.W.2d 47; State v. Montgomery, Mo.Sup., 223 S.W.2d 463.
The appellant also contends, in his motion for a new trial, that the jury's verdict assessing his punishment at five years in the penitentiary is "excessive and indicates that it is a result of prejudice against the defendant and the type of crime committed." *596 But the punishment, even though it was the maximum, is within the limits prescribed by the statutes for grand larceny. Mo.R.S.A. §§ 4456, 4457. Primarily it is the jury's function, within the statutory limits, to assess the punishment and the record here does not so demonstrate passion or prejudice that this court can confidently say that the trial court abused its discretion when it overruled the motion for a new trial and thereby found that the punishment assessed was not greater "than, under the circumstances of the case, ought to be inflicted." State v. Rizor, 353 Mo. 368, 374, 182 S.W.2d 525; State v. Gardner, 356 Mo. 1015, 204 S.W.2d 716; Mo. R.S.A. § 4096.
In addition to the errors assigned in the motion for a new trial, we have examined the entire record and find no reversible error. Accordingly the judgment is affirmed.
WESTHUES and BOHLING, CC., concur.
PER CURIAM.
The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.
All concur.