**STATE v. CASTINO.**

No. 43799.

Supreme Court of Missouri.
Division No. 1.

Feb. 8, 1954.

Charles M. Shaw and Wayne C. Smith, Jr., Clayton, for appellant.

John M. Dalton, Atty. Gen., Paul N. Chitwood, Asst. Atty. Gen., for respondent.

VAN OSDOL, Commissioner.

Defendant and two others were jointly charged with the crime of keeping gaming devices (§ 563.370 RSMo 1949, repealed and re-enacted, Laws of Missouri 1951, pp. 454–455, A.L.1951, V.A.M.S.). Defendant requested and was granted a severance. Upon separate trial he was convicted and his punishment assessed by the jury at two years imprisonment in the State Penitentiary. He has appealed from the ensuing judgment.

Defendant-appellant contends the trial court erred (1) in overruling defendant's motion for a directed verdict; (2) in giving the State's Instructions 1 and 2; (3) in refusing to declare a mistrial because of the trial judge's remarks to the panel of veniremen on voir dire; and (4) in permitting counsel for the State to cross-examine and impeach a State's witness.

Attending defendant-appellant's contention of error (1) in refusing his motion for a directed verdict—we shall state the evidence tending to show defendant's guilt of the crime as charged.

At about 1 o'clock in the morning of December 31, 1952, the sheriff of Jefferson County and three of his deputies, the prosecuting attorney of the County and his assistant, and two state highway patrolmen "raided" Spring Dale Tavern located on State Highway No. 141 in Jefferson County. In approaching the Tavern the raiding party divided and, while some of the party guarded the rear door, others entered the front door of the Tavern. The officers observed gaming tables and other gaming equipment in the main (front) room of the building. The tables and equipment consisted of two "regulation" dice or crap tables, one "regulation" blackjack table, cards, dice, and one roulette table with wheel and croupier's stick. "Around twenty persons (including defendant) were present." There were dice on the crap tables, and cards on the blackjack table. A witness testified that when the officers entered there were several people gathered around one of the large tables. One Dikos was on a "high seat" above the table with a stick in his hand, and a stack of chips was on the end of the table. "Some lady had what I consider a dice cup * * * she was shaking the dice cup. I could hear a noise of something clicking in the cup * * *." When the officers were "taking down" the

various tables, defendant "wanted us not to hurt the tables * * *. We had to take the tables apart and take the felt off the top. There were large screw bolts taken out that he didn't want us to bother." Defendant cautioned that the roulette wheel alone "would cost at least $1000."

A witness, Craig, who had been jointly charged with defendant and who had entered a plea of guilty but whose punishment had not been assessed, testified for the State in describing the manner of using the described devices and equipment in gambling. They had been "used some" within two weeks before December 31st, the day of the raid as stated. The witness "financed" the games. "Customers" came to the place and played at the devices. Defendant was frequently in and out of the place. Defendant "stood around and talked to people." The witness further said defendant "was supposed to scout some business for me, working for me * * * supposed to get a per cent out of it provided we made anything."

■ In our opinion the foregoing constitutes substantial evidence tending to show that defendant (with others) was keeping gaming devices in the sense as proscribed by Section 563.370, supra. We have noted the testimony of defendant's anxiety in the protection of the gaming tables as they were being taken down by the officers. The testimony of the witness Craig that defendant was supposed to "scout" business could be reasonably interpreted as meaning there was an actual arrangement that defendant was to solicit or induce persons to play at the devices, which fact, with the fact of defendant's presence "standing around and talking to people" and the fact that defendant was frequently in and out of the place, constituted substantial evidence, we think, tending to prove defendant and Dikos and Craig were acting with the common intent to "set up and keep" the described gaming equipment, and to induce, entice or permit gambling therewith and thereon as more particularly averred in the information. We believe the trial court did not err in refusing to sustain defendant's motion for a directed verdict of acquittal. State v.

Frisby, Mo.Sup., 214 S.W.2d 552; State v. Rizor, 351 Mo. 137, 171 S.W.2d 710; State v. Souva, 234 Mo. 566, 137 S.W. 873; State v. Chauvin, 231 Mo. 31, 132 S.W. 243; State v. Mathis, 206 Mo. 604, 105 S. W. 604. And, since defendant-appellant contends (2) the State's given Instruction No. 1 was erroneous for the reason that no competent evidence sustained the submission that defendant acted jointly with another or others in setting up, maintaining and operating the gaming devices, we rule that such contention is also without merit.

■ With regard to the State's Instruction No. 2, no assignment of error of the trial court in giving the instruction was made in defendant's motion for a new trial. The trial court was not called upon to consider the contention or assignment of error in the giving of the instruction, which contention is now made for the first time in defendant's brief upon this appeal. The contention may not now be considered here. State v. Boyd, Mo.Sup., 256 S.W.2d 765; § 547.030 RSMo 1949, V.A.M.S.

(3) After the veniremen were sworn for interrogation on voir dire, the trial judge addressed the panel as follows,

"This is a proceeding commenced by information filed against three defendants for setting up and maintaining a gambling device at a place known as Springdale located on highway 141 and that one of these defendants has already pleaded guilty but has not as yet been sentenced by the Court."

Defendant's counsel moved for a discharge of the jury on the ground "that prejudicial error was committed in advising the jury panel that one of the defendants who was indicted in this matter has pleaded guilty and has not been sentenced by the Court. Also I wish to move for the discharge of the jury panel for the Court advising the jury that there were others charged in this information since we have asked for a severance and a severance has been granted and only Mr. Castino is on trial this morning and the Court's remarks are prejudicial error." The motion was overruled.

Defendant, having been charged jointly with others, had demanded and was consequently entitled to and had been granted a separate trial as a matter of right. § 545.880 RSMo 1949, V.A.M.S. He should have been given a trial conducted as though he had been charged separately. Abbott's Criminal Trial Practice, 4th Ed., § 167, pp. 303–304. In this case, at the outset and before the beginning of the trial proper, the veniremen were told by the judge that the information was originally against three defendants, in effect, thus advising that defendant (and two others) had been charged with setting up and maintaining a gaming device. The judge then proceeded to advise the jury that "one of these defendants has already pleaded guilty but has not as yet been sentenced by the Court." As we see it, the veniremen (including those subsequently sworn as jurors to try the cause) could have reasonably understood (and probably did) that the judge thought the three who had been jointly charged, including defendant, were guilty as charged, because the judge said one of the defendants had *already pleaded guilty*. We believe the trial judge's statement was improper and prejudicial. The State admits that the judge's statement was "improper * * * since it might have been misunderstood and caused the jury to be biased and prejudiced against the appellant." But State's counsel argues that the jury did not misunderstand the judge's statement and so was not prejudiced because "the jury's verdict did not impose a severe punishment upon appellant but only one of a term of two years in the State Penitentiary, when it might have imposed one for a term of five years" under the provisions of the statute, § 563.370, supra. We cannot follow this argument—we note that the jury also "might have" assessed punishment by imprisonment for a term of one day in the county jail under the statute; but—more to the point—the jury "might have" found the defendant not guilty. The probable prejudice went not so much to the punishment as to the issue of guilt or innocence and may have been determinative. A trial judge should avoid any indication of his belief that a defendant is guilty. Of course, such an indication might determine a verdict. State v. Jones, Mo.Sup., 197 S.W. 156. The rule is well settled that a fair trial exacts absolute impartiality on the part of the judge as to both his conduct and remarks. A judge must not say anything that can be construed by the jury to the prejudice of a defendant. If the damaging effect of a trial judge's improper remarks can be cured by instruction or admonition to the jury, the remarks are usually held not prejudicial where such steps are timely taken by the judge. State v. Hudson, 358 Mo. 424, 215 S.W.2d 441. In the instant case the trial judge overruled the motion for a mistrial and did nothing at all which would tend to purge the prejudicial effect of the manifestly improper statement.

(4) It is unnecessary to review the contention of error in permitting State's counsel to cross-examine and attempt to impeach a witness for the State. The trial situation giving rise to the contention in all probability will not recur upon a retrial. However, it is the general rule that a party by calling a witness vouches for his credibility and will not be permitted to cross-examine or impeach him, except in case of entrapment, or where he is hostile. The latter exception is especially applicable where the party is obliged to call the witness. These are considered to be matters within the reasonable discretion of the trial court. It has also been said that it is not sufficient to warrant a party, who puts a witness on the stand, in impeaching such witness (by showing contradictory extrajudicial statements) that the "witness merely fails or refuses to tell the facts which he had theretofore related extrajudicially or fails to tell all of such facts, but, in order to warrant impeachment in the mode stated, the witness must go further, and by relating wholly contradictory facts become in effect a witness for the adverse side. In the latter event the party calling the witness is entitled to show that he was misled and entrapped by the witness' former words and attitude into calling the adverse witness. He is not so entitled, however, when the witness merely fails to relate facts which the party offering him had been led to be-

lieve he would relate." State v. Drummins, 274 Mo. 632, at page 647, 204 S.W. 271, at page 276. See also State v. Bowen, 263 Mo. 279, 172 S.W. 367; State v. Hogan, 352 Mo. 379, 177 S.W. 465; Burnam v. Chicago Great Western R. Co., 340 Mo. 25, 100 S.W. 2d 858; Crabtree v. Kurn, 351 Mo. 628, 173 S.W.2d 851; Mooney v. Terminal R. Ass'n of St. Louis, 352 Mo. 245, 176 S.W.2d 605; Malone v. Gardner, 362 Mo. 569, 242 S.W.2d 516.

The judgment should be reversed and the cause remanded.

It is so ordered.

LOZIER and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.