STATE of Missouri, Respondent,

v.

Gerald Francis **TETTAMBLE**, Appellant.

No. 50911.

Supreme Court of Missouri,

Division No. 1.

Oct. 11, 1965.

Hale W. Brown, Kirkwood, for appellant.

Norman H. Anderson, Atty. Gen., Jefferson City, Frederick E. Steck, Sp. Asst. Atty. Gen., Sikeston, for respondent.

HOUSER, Commissioner.

■ Gerald Francis Tettamble was convicted of murder in the second degree and sentenced to 99 years in the custody of the Department of Corrections. He was represented by counsel, who filed a motion for a new trial and after that was overruled filed a notice of appeal. Neither appellant nor his attorney filed a brief on appeal. In this situation we review all assignments of error properly preserved in the motion for new trial. State v. Malone, Mo.Sup., 382 S.W. 2d 679.

The evidence favorable to the state demonstrated the following set of facts: John Howell and two other persons suspected of complicity in a burglary were arrested and confined in the St. Francois County jail on June 25, 1963. Howell was not sick on admission to the jail, and was not out of the jail at any time after his admission and prior to his death. The three suspects were held in common with other prisoners, including Tettamble and one Stanley Johnson. On the evening of June 26 Tettamble told Howell to fight an inmate named Wampler or else Howell would have to fight Tettamble. Tettamble was at least 6 feet 2 inches tall, whereas Howell was 5 feet 9 inches in height. Howell and Wampler wrestled around for 4 or 5 minutes. When they quit and "laid down" Tettamble told Howell he would have to fight someone else. Howell then wrestled with prisoner

Ransom. Then Tettamble had Howell wrestle with one Maples. No blows were struck in the course of this scuffling. Later Tettamble and Johnson summoned Howell into a cell. They had a blanket over the door. Tettamble tried to force Howell to perform unnatural sex acts with Tettamble. When Howell refused to comply with Tettamble's demands Tettamble slapped him and then, using his fists, hit Howell "real hard" blows—"hard licks"—in his chest and stomach, over a period of 15 to 20 minutes. Then Johnson backed Howell up against a wall, "fighting" him for 10 or 15 minutes, striking him 10 or 15 times in the stomach. When Johnson quit Tettamble started in on Howell again, hitting him in the stomach, chest, side and arms. Howell was hollering, trying to get them to quit, trying to cover and defend himself. He did not "fight back" at Tettamble or Johnson. Afterwards Howell laid down on the bed, complaining of his stomach. Later Howell, with all of his clothes stripped off, was seen crawling on the concrete floor on his hands and knees before Tettamble, who grinned at two of the other inmates, took his foot and kicked Howell, who fell 2 or 3 feet, hitting his stomach or midsection on and across a piece of channel iron 2 to 4 inches high—an iron track on which the cell door slides back and forth. Howell groaned. It knocked the breath out of him. He got up, holding his stomach, unable to talk. Later, complaining of his stomach, he went into his cell and laid down. Next morning Howell was "in bad pain." He walked "real stiff like he couldn't hardly move." Tettamble told him to do some push-ups and it would take the cramps out of his stomach. He ordered him to do 50 push-ups or else Howell was going "to get some more of what he got before." Howell did 3 push-ups but could do no more. The pain increased during the day. At 5 p.m. on June 27, 1963 he "got real bad." The inmates beat on the walls to get help, to get a doctor. An hour later a doctor arrived, examined Howell and pronounced him dead. Howell died from a fresh perforation wound in the stomach resulting in peritonitis. The injury was 15 to 24 hours old. A sufficiently hard blow on the stomach with a fist can rupture a stomach. A man hitting Howell in the stomach with force 10 or 15 times with his fists and kicking him with his foot so that his stomach landed on a metal object 2 to 4 inches high could have caused the stomach perforation. After Howell's body was taken from the jail Tettamble in an argument with another inmate told the latter that "he'd better watch it or he'd put a hole in his stomach like he done Howell."—Tettamble told the other prisoners not to say anything about what happened; that if anyone asked whether anybody hit Howell, to tell them that no one touched him. Thursday morning, June 27, Tettamble and Johnson unsuccessfully attempted to escape from jail by using an iron slat and threatened one prisoner if he said anything about the fighting in jail. Tettamble told another prisoner that he was glad Howell was dead and said "now he can't rat on me." The inmates of the jail, afraid of Tettamble, at first denied to investigating officers that there had been any fighting or misconduct in the jail at any time. After Tettamble was removed from the jail they freely talked and told what had occurred.

■■ The first assignment in the motion for new trial is that the court erred in not declaring a mistrial on account of the statement made by the prosecuting attorney during the voir dire examination that the father of the boy "that was killed" was sitting in the front row. On objection the panel was instructed to disregard that statement. The prosecuting attorney then stated that the boy "died in jail" and that his father was in the courtroom. The prosecuting attorney asked the father to stand up. The panel was asked whether they knew him and to raise their hands if any of them had any kind of relationship with the father. No hands were raised. The prosecuting attorney did not ask any other persons to stand. After three questions were asked of the panel, and after the

court had ruled on objections to two questions and the third question was withdrawn, counsel for defendant for the first time orally moved for a mistrial on the ground that having the boy's father stand up in front of the entire panel after making the objectionable statement that the boy was "killed" in the jail was calculated to prejudice the jury against defendant. Whether the prosecuting attorney was acting in good faith was a matter for the trial court to determine in the exercise of its discretion. State v. Flinn, Mo.Sup., 96 S.W.2d 506, 509 [2]. We find no abuse of discretion in the court's ruling. In Flinn, a homicide case, the prosecuting official drew the attention of the jury to the deceased's widow, who was in the courtroom, and stated that she was the widow of "this murdered man." The overruling of an objection to that statement was held nonprejudicial, and we so rule in the similar circumstances before us.

■ Instruction S–1 recited that defendant and Johnson were charged together with murder, that a severance had been granted and that only defendant Tettamble was on trial "at this time." Appellant excepts to these recitals on the ground that they would cause the jury to believe that Johnson would be tried at a later date and that this jury was in competition with another jury, or that what this jury did would be a precedent for another jury in the future. Since every defendant is entitled to a trial conducted as though he had been charged separately, State v. Castino, Mo.Sup., 264 S.W.2d 372, 375, citing Abbott's Criminal Trial Practice, 4th Ed., § 167, pp. 303–304, it is better practice not to allude to or instruct as to the fact that the defendant on trial had formerly been charged with others and that a severance had been granted. Such an allusion, coupled with a reference by the trial judge to the fact that one of those jointly charged had already plead guilty, has been ruled reversible error. State v. Castino, supra. Absent the latter element, such an allusion or instruction, while considered unnecessary, is not necessarily prejudicial, State v. Deppe, Mo.Sup., 286 S.W.2d 776, 780, 781 [7], and we find no prejudice to appellant's rights in this case based upon the claim that the jury may have been led to believe that it was in competition with or was establishing a precedent for another jury.

■ It is further objected that S–1 failed to inform the jury that the recital of the charge was no evidence of the guilt of defendant. After informing the jury of the crime with which defendant was charged S–1 clearly told the jury that defendant plead not guilty and that this raised an issue of fact which the jury was to determine "from all the evidence in the case," and that it was the jury's duty to find defendant guilty or not guilty according to the law as declared by the court in the instructions and the evidence as the jury received it under the direction of the court. This sufficiently admonished the jurors with respect to their duties. The further admonition suggested was not necessary.

■ Exception is taken to the language of the verdict-directing instructions "on the 26th day of June, 1963, *or at any time prior to the institution of this cause on the 13th day of July, 1963, * * *"* on the ground that the italicized language gave the jury a roving commission to find defendant guilty "of any act that the defendant had done at any time * * * presumably from the date of his birth until the date of the filing of the charge." This exception is not well-founded. Time is not of the essence of the offense of homicide. The proof of its commission is not limited to the precise date stated in the information. It may be shown to have been committed at any time. There is no statute of limitations on the crime of murder. § 541.190, V.A.M.S. In the case of an offense for which no limitation of time is fixed the court need not fix a time limit within which the jury must find the commission of the offense. State v. Swain, 239 Mo. 723, 144 S.W. 427 [3].

Exception is taken to the language of S–3 (the verdict-directing instruction submitting second degree murder) which required that an assault, hitting, striking, etc. be done feloniously, wilfully, premeditatedly, and with malice aforethought, *but not deliberately,* in order to find defendant guilty of second degree murder. Appellant argues that this had the effect of begging the question; that a jury should be instructed on what it must find and not be told what it does not have to find. This argument is fatuous. Lack of deliberation is the factor which distinguishes second from first degree murder. State v. Reagan, Mo.Sup., 108 S.W.2d 391, 396 [9]. From time immemorial the classic definition of second degree murder has been "the killing of a human being wilfully, premeditatedly, and with malice aforethought, but without deliberation." State v. Bruton, Mo.Sup., 383 S.W.2d 525 [2], and cases cited l. c. 528. The words "but not deliberately" were necessary and proper in S–3.

The requirement that the jury find that a *mortal wound* was inflicted is challenged on the ground that there was no evidence that defendant inflicted a mortal wound. Our recital of the facts refutes this argument.

The manslaughter Instruction S–4 is attacked. It is urged that it did not define justifiable homicide. S–4 told the jury that manslaughter is the killing of a human being not herein declared to be murder in the second degree, or excusable or justifiable homicide, and authorized a conviction of manslaughter upon the finding of an unlawful and intentional hitting, striking, beating and mortally wounding, without malice and without deliberation and not in the lawful defense of defendant's person. It was not necessary to give the jury the statutory definition of justifiable homicide, § 559.040, V.A.M.S., for the reason that there was no evidence that defendant inflicted the mortal wound in resisting an attempt to murder defendant or to commit a felony upon him, in the lawful defense of his person, in the apprehension of any person for a felony committed, in lawfully suppressing a riot or insurrection or in lawfully keeping or preserving the peace. See State v. Slaten, Mo.Sup., 252 S.W.2d 330; State v. Westmoreland, Mo. Sup., 126 S.W.2d 202 [5].

Appellant contends that the evidence did not warrant the giving of a manslaughter instruction because the evidence did not show beyond a reasonable doubt when and how deceased sustained the rupture to his stomach, or when and how a mortal blow was inflicted. We find ample evidence from which a jury could find that the mortal blow, a perforation wound of the stomach, was inflicted on Wednesday evening, June 26, 1963, in the course of a series of blows and knockdowns administered to John Howell over a period of 15 to 20 minutes by appellant, who beat and struck John Howell in the stomach and kicked him while crawling on the floor, causing him to fall onto an iron railing, and that the perforation wound of the stomach was followed by peritonitis which caused his death the following day.

Instructions S–5 and S–6 respectively submit assault with intent to do great bodily harm with and without malice aforethought. §§ 559.180 and 559.190, V.A. M.S. Appellant challenges them on the ground that the evidence does not show that a dangerous and deadly weapon was used or that death resulted while appellant was committing a felony. In order to convict a defendant of these crimes the use of a deadly weapon or his engagement in the commission of a felony is not a prerequisite. He who adopts any other means or force likely to produce great bodily harm may be convicted under these sections.

We find no error in S–4, S–5 and S–6, but appellant could not complain of them even if they were erroneous, since he was convicted of the more serious offense of murder in the second degree. Any error in them would be cured by the verdict. Mo. Digest, Homicide, ⬱340(4).

Instruction S-7 follows:

"You are instructed that the law presumes the innocence, and not the guilt, of the defendant; and this presumption attends him throughout the trial, and at the end entitles him to an acquittal unless the evidence in the case when taken as a whole satisfies you of his guilt beyond a reasonable doubt. You are, however, instructed that a reasonable doubt of the guilt of the defendant which would warrant you in acquitting him on the ground of your having such reasonable doubt of his guilt should be a substantial doubt of his guilt upon a full and fair consideration by you of all the evidence, facts, and circumstances in the case, and not a mere possibility that he may be innocent."

Appellant claims that S-7 limited the burden of proof to the satisfaction of the jury and that it is in fact a converse of the one that should have been given in that while intended to require the jury to find defendant guilty beyond a reasonable doubt it spends most of its language instructing the jury "how to get around the purpose of the instruction." We find in S-7 no improper or prejudicial limitation on the burden of proof. A requirement that guilt be established *to the satisfaction* of the jury and beyond a reasonable doubt does not "whittle away or minimize the defendant's rights and the presumption of innocence to which he is entitled." State v. Caffey, Mo.Sup., 365 S.W.2d 607, 612 [11]. Appellant does not specify what different instruction should have been given and does not cite any case in support of his criticisms. S-7 was given in precisely the same language in State v. Spaugh, 200 Mo. 571, 98 S.W. 55, where, in response to the attack made on it, it was said that "It has often been approved by this court, and is entirely sufficient." 98 S.W. 1. c. 63 [6a].

It is urged that the court erred in permitting the prosecuting attorney to refer to appellant in his closing argument as a sexual pervert who should be put away, "since there was no perversion evidence actually proven." It is true that the prosecuting attorney referred to Tettamble as a sex-perverted individual and recommended to the jury that he be taken out of society. Both the reference and the recommendation, however, were amply justified and constituted reasonable deduction and legitimate comment under this record, the sordid details of which are so repugnant that they will not be recited in this opinion.

Error is assigned in permitting Dr. Roberts to testify concerning skin tissues on slides, for the reason that no proper foundation was laid. Dr. Cooper, a qualified M.D. and pathologist, performed an autopsy on the badly battered body of John Howell at the funeral home. Among other things he found bruises on the arms of the deceased, and a perforation wound of the stomach. He took tissues from both arm and stomach. Slides of both were made and examined under a microscope. These slides were identified at the trial by Dr. Cooper as slides of tissue from deceased, prepared by a technologist under his direction. In his opinion the tissue from the bruised arm revealed an injury 3 to 5 days old, whereas the stomach tissue indicated that the perforation wound in the stomach was less than 24 hours old. Dr. Roberts is another qualified M.D. who specializes in clinical pathology. Dr. Cooper testified that Dr. Roberts had occasion to examine these slides, and Dr. Roberts testified that he examined them. Dr. Roberts gave as his opinion that the injury to the tissue said to be from an arm showed older inflammatory changes, "probably several days duration" whereas the slides of the stomach tissue showed a very acute inflammation wound that must have been very recent, somewhere in the neighborhood of 15 to 20 hours old. The record shows that a proper foundation was laid for this testimony.

Appellant urges that the testimony of Drs. Cooper and Roberts should not have been allowed to be considered by the jury

"since the testimony of Dr. Cooper and the evidence he gave contradicted itself * *." The alleged contradiction is not pointed out. We have examined Dr. Cooper's testimony with care. He testified directly, carefully and to the point. He was rigorously cross-examined. The objection that his testimony was improperly submitted to the jury on the ground that it contradicted itself is extravagant and entirely without merit.

Finally, appellant complains that an instruction on circumstantial evidence was not given, but appellant fails to give any reason why this type of instruction was required under the evidence in this case. An examination of the transcript shows that no request for a circumstantial evidence instruction was made. In the absence of a request the court cannot be convicted of error in failing to instruct on this subject. State v. Morris, Mo.Sup., 307 S.W. 2d 667, 675; State v. Allen, Mo.Sup., 235 S.W.2d 294 [4]; Mo.Digest, Criminal Law, ☜824(9).

Appellant, a prisoner in the penitentiary, requested to be allowed to appear in person at the oral argument of his appeal. His request was granted and he was present in court when his case was called. Not prepared to argue the case, appellant asked for and was given 15 days within which to file a brief. The case was submitted on briefs. On the 17th day appellant's handwritten brief was received and filed in the office of the clerk of this court. Although late, we will consider it. In it appellant raises one point and one point only: that the magistrate erred in not appointing counsel to represent appellant at the preliminary hearing and in not advising him of his right to the appointment of counsel, although appellant requested to consult with counsel at the time. Appellant cites the following cases in support of his position: Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Reck v. Pate, 367 U.S. 433, 440, 81 S.Ct. 1541, 1546, 6 L.Ed.2d 948; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Snyder v. Com. of Massachusetts, 291 U.S. 97, 118, 54 S.Ct. 330, 336, 78 L.Ed. 674. These cases are not in point. None of them deals with the right to counsel at a preliminary hearing where the defendant had competent counsel at the trial. The law in this state is well settled that "Neither the federal or state constitution, nor any of our statutes require the magistrate to appoint counsel for the accused at a preliminary examination." State v. Turner, Mo.Sup., 353 S.W.2d 602, 604 [6–8], cited and quoted with approval in State v. Small, Mo.Sup., 386 S.W.2d 379, 381, decided February 8, 1965. And see State v. Phelps, Mo.Sup., 384 S.W.2d 616, 619 [6]. Appellant had competent counsel at the trial. Any defect in connection with the preliminary hearing was waived by appellant failing to object and going to trial. State v. Small, supra, 386 S.W.2d, l. c. 381 [3]; State v. Taylor, 362 Mo. 676, 243 S.W.2d 301, 302 [1].

Under Criminal Rule 28.02, V.A.M.R. we have reviewed the information, verdict, judgment and sentence on the record before us and we find them proper in form and substance.

The judgment is affirmed.

WELBORN and HIGGINS, CC., concur.

PER CURIAM.

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.