**BAETJER et al. v. GARZOT et al.**

No. 3855.

Circuit Court of Appeals, First Circuit.

June 18, 1943.

---

E. T. Fiddler, of San Juan, P. R., for appellants.

Nelson Gammans, of New York City, and Rogelio Fernandez Garzot and Henry G. Molina, both of San Juan, P. R., for appellees.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

In our former opinion in this case (124 F.2d 920), we held that a certain deed in the defendants' chain of title to 8.81 cuerdas of land in Naguabo, Puerto Rico, known as Central Triunfo, gave the plaintiffs the right to acquire that property from the defendants upon payment to them of $1,762. But we also held that under § 382[1] of the Civil Code of Puerto Rico the plaintiffs were not entitled to a conveyance of the property until in addition to the above sum they also paid to the defendants not only the "necessary expenses", but also either the "useful expenses" or the increase in the value of the property in consequence thereof, as they might elect. The first holding above was in affirmation of the court below; the second one was not.

After our mandate went down the defendants moved in the District Court for judgment thereon and submitted a draft of a judgment which included a provision "that the plaintiffs pay to the defendants the sum of $15,000, value of the improvements located on the property". The plaintiffs opposed this motion and asked for a hearing to determine both the amount of the useful expenses and the amount by which the value of the property was increased thereby so that they might intelligently exercise their election to choose one or the other as allowed by the Civil Code. The District Court thereupon took a view of the premises and held a hearing.

From the evidence introduced at this hearing it appears that on August 21, 1916, the same day that the Central Triunfo tract was conveyed to the defendants' ancestor in title, the corporation Garzot y Fuertes, the same grantors deeded two rights of way over their adjacent farms to that corporation "for a railroad track in favor of" Central Triunfo. The purpose of these conveyances of rights of way was to make possible the construction of a railroad to transport sugar cane from the grantors' farms to the sugar mill to be built on the property conveyed. A railroad was subsequently built, approximately 2¼ kilometers of which lay on the Central Triunfo property itself and approximately 14½ kilometers of which lay on the rights of way.

The court below found: (1) That the useful expenses laid out upon Central Triunfo included the amounts spent for the erection and maintenance of buildings, erections, roads, fence, pipes and that part of the railroad which was physically located thereon; (2) that such useful expenses also included the cost of acquiring the two rights of way appurtenant to Central Triunfo as the dominant tenement; (3) that the useful expenses did not include the cost of constructing those parts of the railroad built on the rights of way over the servient tenements; (4) that Central Triunfo was increased in value in the amount of $26,000 by reason of the useful expenses laid out upon it; (5) that there was no need to determine the amount of the useful expenses since they greatly exceeded the amount by which the property was in-

---

[1] "Necessary expenses are refunded to every possessor; but only the possessor in good faith may retain a thing until such expenses are made good to him.

"Useful expenses are refunded to the possessor in good faith with the same right of retention, it being at the option of the party who has defeated him in his possession to refund the amount of the expenses or to pay the increase in the value of the thing in consequence of such expenses."

creased in value by reason thereof; and (6) that the defendants, or their predecessor Riverside Corporation, had expended $48,106.97 to redeem Central Triunfo from a tax sale. Ruling that the amount spent to redeem the property from the tax sale was not an expense within the meaning of § 382 of the Civil Code the court entered a judgment[2] in conformity with its findings and the plaintiffs deposited $27,762 in the registry of the court. The defendants thereupon appealed and on motion, which was not opposed, the court ordered the amount deposited returned to the plaintiffs.

The principal question presented is whether the cost of building the 14½ kilometers of railroad on the rights of way was a useful expense which should have been considered by the court in determining the amount by which the value of Central Triunfo was increased. The defendants contend that it is. The court below, however, as we have seen, concluded otherwise, saying in its memorandum opinion: "I have been unable to agree with defendants in their contention that the cost of the railroad constructed upon the servitudes appurtenant to the 8.81 cuerdas, but not physically upon the 8.81 cuerdas property itself should be considered as one of the useful expenses referred to in section 382 of the Civil Code. There is a close connection between section 382 of the Civil Code and the sections of the Code defining the right of accession, so that the improvement which did not become part of the land by accession would not appear to be an improvement of the class for which the owner is obliged to pay in accordance with section 382. It is my opinion that railroad tracks, ties, roadbed, bridges, etc., located on servient tenements are not properly considered as part of the dominant tenement by accession."

Undoubtedly, as the appellants argue and as the court below concluded, the servitudes are inseparable from the dominant tenement and would, in fact could only, be transferred with it. See § 470 of the Civil Code of Puerto Rico; Mendez v. Bowie, 1 Cir., 118 F.2d 435, 442. They thus became part of the dominant tenement by accession and from this it logically follows that the cost of acquiring them was a useful expense. But the question remains whether the cost of building the railroad upon them was also a useful expense, and the answer to this question, as the court below indicated, depends upon whether or not it, as well as the servitudes upon which it was built, also became by accession a part of the dominant tenement.

Section 294 of the Civil Code provides that "Whatever is built, planted or sown on another's land, and the improvements or repairs made thereon, belong to the owner thereof, subject to what is prescribed in the following sections." And section 297 provides: "The owner of the land which has been built upon, sown, or planted in good faith, has the right to appropriate as his own, the work, sowing or planting, by previously paying the indemnity specified in sections 382 and 383 of this Code, and to oblige the person who has built or planted to pay him the value of the land, and the person who sowed, to pay the corresponding rent."

Looking upon the plaintiffs as the owners of the land included in the Central Triunfo tract by reason of the right of repurchase reserved to them in the deed of the property to the defendants' ancestor in title (the deed of August 21, 1916), the foregoing provisions obligate them under § 382 to pay either the cost of the railroad built on the property itself or else the amount by which the part of the railroad there located increased the value of that property. This is the conclusion of the court below to which the parties seem to agree. It is not before us on this appeal. But the part of the railroad built on the rights of way was not built upon lands owned by the plaintiffs by virtue of the reservation of the right of repurchase contained in the deed mentioned above. That part of the railroad was built upon lands which the plaintiff as the ultimate owners of Central Triunfo

---

[2] In its judgment the court ordered that "The improvements to be transferred with the above described property shall include all constructions and erections of whatever nature physically existing upon the said property, including the concrete support for the railroad bridge spanning the Rio Santiago, which is located on this property, and all servitudes appurtenant to the said property as dominant tenement; but said improvements shall not include the tracks, ties, bridges, or any other portion of the railroad not physically located on the said dominant tenement, title to the said rails, ties, bridges, etc., being reserved to the defendants."

did not own but as to which they had only the right to build, maintain and operate a railroad, that is, upon lands owned by the owners of the servient tenements but subjected to a servitude in favor of Central Triunfo as the dominant tenement, and thus, strictly speaking, sections 294 and 297 of the Code do not apply.

However, the obvious purpose of the sections of the Code which we have quoted is to require one whose property has in good faith been improved by another to pay the improver either the cost of the improvement or the amount by which the improvement has enhanced the value of the property, and it cannot be doubted that an improvement to a right of way appurtenant to a dominant tenement enhances the value of the dominant tenement. Thus the cost of grading or draining a right of way or of building a highway upon it redounds, or may redound, to the benefit of the dominant tenement to which the right of way is appurtenant, and, if it does, the owner of the dominant tenement upon repossessing himself of it should in the spirit of the Code pay the one dispossessed, if he had improved in good faith, either the cost of the improvement or the increase in the value of the dominant tenement occasioned thereby.

The question remains: What improvements must be paid for? As we have seen the Code requires payment only for improvements built upon another's land and an improvement upon another's right of way is not one upon his land but only one upon his right over the land of a third person. To answer the question then we must have recourse to general principles.

We think that the answer to the question propounded above depends upon the intention with which the structure on the right of way was built. If it was built in good faith by one in possession of a right of way with the intention that it should stay permanently in its place even though the builder should later abandon or be dispossessed of the right of way which he had built upon, then the builder should receive, if dispossessed, either his cost of construction or the value of his improvement at the election of the one who dispossessed him. But, on the other hand, it seems to us that if the structure is of a sort which the builder intended to take with him in case of his departure then he must either take it with him when he goes

or abandon it, and in such case he is entitled to no recompense.

In the case at bar there is no expression of intention to be found in either the testimony or the exhibits so we must have recourse to the nature of the structure built on the right of way to determine what must have been the intention of the builder when they were built. Clearly, grading the right of way and draining it involve the building of structures which as a practical matter cannot be removed and so when they were built it must have been intended that they should remain in place. But the same is not true as to the rails, ties and those bridges which from the nature of their construction can be utilized at another site. These are structures which can readily be taken up and removed and so we conclude that the defendants are not entitled to be paid anything with respect to them but that they can either take them away with them when they go or abandon them as they wish. See 22 Am.Jur., Fixtures, § 53; Wiggins Ferry Co. v. Ohio & M. R. Co., 142 U.S. 396, 415, 12 S.Ct. 188, 35 L.Ed. 1055; Hubbard v. Missouri Pac. R. Co., D.C., 288 F. 945.

It is not clear to us whether the court below applied the foregoing principles. In its judgment it reserved to the defendants title to the "rails, ties, bridges, etc.," but in its opinion it does not seem to regard the cost of the roadbed as a useful expense to be considered in arriving at the increased value of the dominant tenement with its servitudes. Since the roadbed is obviously a structure which the parties could not have intended to remove, the servitudes must be valued with the roadbeds on them. As it is not clear that the district court valued the property in accordance with the views expressed above we must reverse and remand.

The only remaining contention made by the defendants which we have to consider can be disposed of briefly.

This contention is that the amount expended to redeem the property from the tax sale should be refunded to them as a necessary expense. We find nothing in the Code or in the statements of the principal commentator upon it to support this view. In fact, this commentator (4 Manresa (ed. 1910) 264 et seq.) takes the position that property taxes are charges (cargas), not necessary expenses at all.

He says (Manresa, 4th ed., 1920, 270, 272):

"(Necessary expenses.—Necessary expenses are only those made for the preservation of the res. So it follows from art. 455 (384 P.R.) and so we have to admit it, since that does not alter the idea which we had of the same heretofore, by virtue of the doctrine of the Roman law and the Partidas: 'If these are not done, they say, the res will deteriorate or all will be lost.' If the res deteriorates or is lost, it is not preserved. Everything which tends, consequently, to avoid that loss or damage, is a necessary expense.

"Let this be well understood, however. The law appears to refer to the preservation of the thing itself, not to its remaining in the hands of the possessor. The expenses have to prevent the thing from deteriorating or being lost, and by deteriorating we mean damage and not incumbrance, and likewise loss is the destruction of the res and not change in possessor. Preservation means here, therefore, the continuance of the res itself."

"The payment of the tax is necessary; but not in the sense in which the law defines necessary expenses. The res itself neither deteriorates nor is destroyed for want of this expense. If the possessor does not pay some quarterly taxes, the property may be embargoed and sold at public auction. The possessor will lose it, will cease retaining it in his power; but the parcel of land will not be lost or suffer damage. The possessor who pays complied with his duties to assure himself possession; but by this payment the land is not in any way altered. Nor can it be said that it involves the legitimate defense of the res, and that in this sense there exists a necessary expense. No one is attacking the right of the possessor and if he comes to see himself deprived of the res, it will be for the contrary reason, it is he who attacks the legitimate right of the State to demand the payment of taxes of all the individuals who find themselves under its shelter and protection.

"The code is in agreement with this doctrine; that payment of the real property tax is not a necessary expense, nor a useful expense nor one of pure luxury and recreation; it is a cost (carga) of the parcel, and as such should be considered included in paragraph second of art. 452 (381 P.R.). It would be absurd to demand the payment of this cost (carga) from the person who has received no income whatever from the real property."

In view of the foregoing

The judgment of the District Court is reversed and the case remanded to that court for further proceedings in conformity with this opinion.