**BARNARD  v.  WABASH R. CO.**

No. 14874.

United States Court of Appeals
Eighth Circuit.

Dec. 7, 1953.

Rehearing Denied Dec. 29, 1953.

Sherman Landau, St. Louis, Mo., for appellant.

Oliver J. Miller, St. Louis, Mo. (Joseph H. Miller, Jacob M. Lashly, and Lashly, Lashly & Miller, St. Louis, Mo., on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and COLLET, Circuit Judges.

WOODROUGH, Circuit Judge.

This action for damages for false arrest and imprisonment was brought on behalf of Billy Barnard, a minor, residing in St. Louis, Missouri, by his mother and natural guardian, Evelyn Barnard, against defendant Wabash Railroad Company, a corporation organized under the laws of the State of Ohio. It was alleged in the complaint that plaintiff was falsely imprisoned by virtue of a false arrest at the hands of one Gabbert, a private watchman employed by defendant, and $50,000 actual damages and punitive damages in the amount of $50,000 were prayed for. Defendant answered by general denial and alleged that plaintiff was committing acts of trespass upon the private property of defendant, threatening danger to the free passage of trains and the safety of passengers thereon, and to plaintiff himself and his companions, and was detained by defendant's watchman Gabbert by virtue of his authority as an officer of the law, duly commissioned under Section 84.340 RSMo 1949, V.A.M.S. Upon the issues so joined, trial was had to a jury which rendered a verdict for defendant. Judgment of dismissal having been entered on said verdict and motion for new trial overruled, plaintiff perfected this appeal.

It appears that appellee maintains and operates a double line track through Forest Park, a public park in the City of St. Louis, under an easement of right of way granted by the City. The tracks lie in an excavation or depression about 15 feet deep and run in an "S" curve through the park. Alongside of the tracks a lead sheathed cable, used to communicate messages regarding appellee's train movements, hangs suspended from poles about six or seven feet above the ground. Approximately 800 feet west of Kingshighway, which is the eastern boundary of the park, and 1200 feet

south of Lindell Boulevard, the northern boundary line, appellee has erected a footbridge over its tracks for the convenience and safety of pedestrians in the park. At about 3:30 P. M. on May 30, 1951 (Decoration Day), appellant Billy Barnard, 14, and a companion, Jimmy Manson, 16, approached this footbridge on their way home from the park. They decided to linger awhile in the shade under the bridge and proceeded down the embankment to the tracks. Appellant testified that after sitting in the shade and talking awhile Manson jumped up and "chinned" himself on the cable running alongside of the railroad tracks. When he dropped to the ground, appellant performed the same feat. Both then sat near the tracks and "flipped" pebbles at the cable. The next thing he knew a man, who he later learned was Claude I. Gabbert, was standing on the west embankment pointing a gun at him. Mr. Gabbert, a private watchman employed by defendant, who had been patrolling this right of way since 1920, denied that he at any time removed his gun from inside his shirt where he customarily carried it. He testified that his attention was attracted when he heard some boys shouting and saw the cable and pole swaying. On hurrying over to the footbridge Gabbert saw both of the boys hanging and swinging on the cable at the same time. It is admitted that appellant weighed 130 pounds and his companion 160 pounds at the time, and their combined weight exceeded the snow or ice weight the cable was designed to carry. It was also proved that such hanging and swinging on the cable could impair its efficiency for use for train movements. Gabbert testified that as he crossed the footbridge the cable stopped swaying and he heard rocks hitting the steel girders of the bridge, sounding like hammer blows, and that upon looking over the side of the bridge he saw the boys throwing rocks at the cable. He requested a stranger who was walking across the bridge to telephone the police department to send down a scout car and gave him the telephone number and a quarter for the purpose. He further

testified that he went about two-thirds of the way down the embankment and asked the boys what they were doing. On their reply that they didn't think they were doing any harm, Gabbert showed them his badge as watchman of appellee company and told them they were under arrest and to come along with him. Appellant's testimony that Gabbert said he would shoot them in the back if they tried to run was flatly denied by Gabbert. Gabbert preceded appellant and his companion up the embankment and they walked to a spot some distance east of the footbridge where they waited five or ten minutes for a patrol car from the city police department. After proceeding some distance further, they met the patrol car and Gabbert told the officers to take appellant and Manson to the station and hold them for juvenile officers. The boys were placed in the cell block but were not booked nor charged with any offense. Police records at the 11th District Station show only that they were taken into custody. They had been turned over to the officers at about 3:45 P. M. and were released to their parents at 5:00 P. M. On the following morning appellant reported to the juvenile officer and received a lecture on the dangers of playing around the railroad tracks in the park. What final disposition of the case was made by the juvenile court does not appear in the record because under the law of Missouri such proceedings are cloaked with secrecy and cannot, with certain exceptions, be used as evidence in other cases.

For the purposes of this appeal it is undisputed that appellant was taken into custody and temporarily deprived of his liberty, so that an actual arrest was effected.

Appellant has assigned a large number of errors in the giving and refusing of instructions and in the admission and exclusion of testimony, and especially he contends that the court erred in refusing his request for peremptory instruction in his favor on the ground that the arrest was unlawful because Gabbert had no authority to make an arrest.

The trial court charged the jury, " * * * on said occasion Gabbert was a private watchman, by commission from the St. Louis Board of Police Commissioners, and as such had the power to arrest under said commission." Appellant contends that this was an erroneous statement of the law and that, under the law of Missouri, the authority of a private watchman to make an arrest is equal to, but no greater than, that of private citizens generally.

Admittedly there is no state statute specifically providing that private watchmen shall have the same power to arrest as police officers and other law enforcement officials. Nor have we been able to find a court decision so holding. Neither is there controlling decision that the duly licensed watchman does not have such power. The trial court's charge was based upon its interpretation of two sections of the Missouri statute. Section 84.340 RSMo 1949, V.A.M.S., provides:

"The police commissioner of the said cities shall have power to regulate and license all private watchmen, private detectives and private policemen, serving or acting as such in said cities, and no person shall act as such private watchman, private detective or private policeman in said cities without first having obtained the written license of the president or acting president of said police commissions of the said cities, under pain of being guilty of a misdemeanor (7712)."

Section 84.330 RSMo 1949, V.A.M.S., further provides:

"The members of the police force of the cities covered by sections 84.010 to 84.340, organized and appointed by the police commissioners of said cities, are hereby declared to be officers of the said cities, under the charter and ordinances thereof, and also to be officers of the state of Missouri, and shall be so deemed and taken in all courts having jurisdiction of offenses against the laws

of this state or the ordinances of said cities (7711)."

The trial court construed these sections to mean that this private watchman, licensed and appointed by the Board of Police Commissioners, had the power to make the arrest on defendant's right-of-way. Appellant, on the other hand, argues that Section 84.340 was enacted only to give the Board of Police Commissioners means by which to regulate the activities of private watchmen and that the appointment of members of the police force under Section 84.330 does not contemplate nor include private watchmen. Further, that Section 84.-100 RSMo 1949, V.A.M.S., limits the number of policemen for the city of St. Louis and does not include private watchmen. And finally, that the sole purpose of the license granted under Section 84.-340 is to clothe the private watchman with immunity from arrest for carrying a gun.

In the absence of controlling authority on this point, we must decline to hold that the charge given by the court below was an erroneous statement of the law. As this court has said many times, "The considered opinion of a trial judge as to a question of local law may properly be accorded great weight by this court. It will not adopt a view contrary to that of the trial judge unless convinced of error. * * * All that this court reasonably can be expected to do in reviewing cases governed by state law is to see that the determination of the trial court is not induced by a clear misconception or misapplication of the law." Russell v. Turner, 8 Cir., 1945, 148 F.2d 562, 564. See also Northern Liquid Gas Co. v. Hildreth, 8 Cir., 180 F.2d 330; Nolley v. Chicago, M. St. P. & P. R. Co., 8 Cir., 183 F.2d 566; National Bellas Hess, Inc., v. Kalis, 8 Cir., 191 F.2d 739. In Buder v. Becker, 8 Cir., 1950, 185 F.2d 311, a case involving the construction of a Missouri statute, this court reiterated and reaffirmed the rule that it would not adopt a view contrary to that of the trial judge on a doubtful question of local law, unless

clearly convinced of error. We are not so convinced that the lower court erred in stating the law in this case. On the contrary, its construction is strengthened when the wording of the license granted under Section 84.340 is considered. The oath taken by all private watchmen, which is recited in said license, provides, in part: " * * *; that I will strictly obey all lawful orders of the Board of Police Commissioners, the Chief of Police or any other officer placed in authority over me." It further provides that the watchman will wear such dress, badge, or emblem as designated and will report to the Captain in charge of the police district to which he is assigned. These recitations in the oath lend support to the ruling of the trial court that a private watchman has the power to arrest.

■ As we sustain the court's conclusion that Gabbert had the power to arrest by virtue of his commission, it follows clearly under the authorities that he could arrest without a warrant, for the commission of a misdemeanor occurring in his presence. Garske v. United States, 8 Cir., 1 F.2d 620; Anderson v. Sager, 8 Cir., 1949, 173 F.2d 794; Leve v. Putting, Mo.App., 196 S.W. 1060; Wehmeyer v. Mulvihill, 150 Mo.App. 197, 206, 130 S.W. 681, and cases cited.

■ The next question considered is whether the circumstances shown by the evidence were such as to authorize the arrest of appellant by Gabbert. The court charged the jury that if they believed from the evidence that appellant, at the time of his arrest, was engaged in sitting upon the roadbed of appellee's right of way, hanging and swinging from the cable alongside of the tracks, and throwing rocks at said cable, all without lawful authority or the consent of appellee, then appellant was guilty of a misdemeanor under Section 79, Chapter 46, Revised Code, City of St. Louis (1948), and the jury should consider this in determining if there was probable cause for his arrest. The pertinent parts of this ordinance, which appellee pleaded in its answer, provide:

"It shall be unlawful for any person without lawful authority, or without the express or implied consent of the owner or his agent, to enter any building or enter on any inclosed or improved real estate, lot or parcel of ground in the city; or, who being upon the land of another, shall fail or refuse to leave the same when requested so to do by the person lawfully in possession thereof, his agent or representative; * * * Any person violating the provisions of this section shall be deemed guilty of a misdemeanor".

Appellant contends that this city ordinance is invalid because it conflicts with Section 560.405 RSMo 1949, V.A.M.S., which provides that, in order for a trespass of real property to be a misdemeanor the entry must be wilful, malicious, or wanton and that injury must result therefrom. Validity of this ordinance was not attacked in the court below and cannot be raised for the first time on appeal. This court has consistently held that a question of law not presented or passed on by the trial court cannot be raised on appeal. Helvering v. Hormel, 8 Cir., 1940, 111 F.2d 1; McGee v. Nee, 8 Cir., 113 F.2d 543; Frieze v. West American Ins. Co., 8 Cir., 1951, 190 F.2d 381; Zuckerman v. McCulley, 8 Cir., 170 F.2d 1015. Appellant further argues that appellee does not come within the terms of the ordinance, because it was not the "owner or his agent" of the property; that the land was neither enclosed nor improved; and that appellant had not refused "to leave the same when requested". Appellee had been occupying and operating over this land since 1937 by virtue of its easement of right of way granted by the City. A railroad right of way has the attributes of a fee, including perpetuity and exclusive use and possession. Midland Valley R. Co. v. Jarvis, 8 Cir., 1928, 29 F. 2d 539, 61 A.L.R. 1064 and the many cases cited therein. The ownership of appellee under the easement of right of

way is sufficient to bring it within the terms of the ordinance. Also, grading of a right of way constitutes an improvement of real estate. Baetjer v. Garzot, 1 Cir., 1943, 136 F.2d 453. Thus appellee comes within the purview of the ordinance. Appellant's argument that he had not refused to leave the premises when requested is also rejected. The two clauses of the first complete sentence of the ordinance provide for two separate and distinct offenses, namely, unlawful entry and refusal to leave when requested. The clauses are separated by the word "or". The offense contained in the first clause is completed with the unlawful entry and there need be no request to leave.

▇▇▇ Appellant also argues that the charge was erroneous in that it failed to include the element of criminal intent, and further, that under the law of Missouri, only the Juvenile Court has authority to find a minor under the age of 17 years guilty of such an offense. This was a civil, not a criminal action, and the charge was given to allow the jury to find, not whether appellant was guilty of a crime, but whether there was probable cause for his arrest. As the court stated, "If there was probable cause, the arrest was legal." A finding of probable cause might also incidentally show the commission of a misdemeanor but that was not the main purpose of the charge. Criminal intent had no place in the court's charge to the jury in this case and was properly excluded. For the same reason, Missouri statutory law granting the Juvenile Court the sole power of adjudging a child under the age of 17 guilty of a crime has no application in this case.

▇▇▇ Appellant urges that the court erred in charging the jury that probable cause constituted a complete defense to the action. The court charged, "If you find that Gabbert had probable cause and was justified under the law in making the arrest, that it was a legal or lawful arrest and not false, then your verdict will be for the defendant * * *." Viewed in the light of the other charges

regarding Gabbert's authority to arrest and the commission of acts in his presence which, if believed, amounted in law to a misdemeanor, this charge correctly stated the law. Being an officer, Gabbert had the right and the duty to arrest if a misdemeanor was being committed in his presence.

▇▇▇ Appellant also contends that the court erred in failing to include the common law offense of trespass in its instructions to the jury. In its answer appellee alleged that appellant was "trespassing upon and walking back and forth across the tracks of defendant's right of way" and therefore appellant argues that the offense of common law trespass was an issue in the case. However, appellee also pleaded the city ordinance quoted above, and the case having been tried on the theory and claim of defendant that an ordinance had been violated, we find no error in the court's charge to that effect.

▇▇▇ The court charged the jury to find from the evidence whether Gabbert, at the time he arrested appellant, was acting in his capacity as private watchman under his commission or in his capacity as an employee of appellee. Gabbert testified that he was under general orders from appellee to patrol and protect appellee's right of way and that the arrest was made in carrying out these general orders. He also testified that he at no time received specific orders from appellee to arrest appellant. We think this question was properly left for the determination of the jury.

▇▇▇ Appellee introduced testimony tending to show that on several occasions previous to appellant's arrest windows on appellee's trains had been broken in this same vicinity by boys throwing rocks and shooting air rifles; that on March 28, 1951, one Salvador Zepeda, a passenger on appellee's train, had to be removed therefrom and taken to a hospital for treatment of an eye injury received from flying glass when a window was shattered by two boys throwing rocks at the train; that ap-

pellee had solicited the help of the city police and instructed its own watchmen to exercise greater vigilance in curbing this juvenile vandalism; that at the time of appellant's arrest, one of appellee's passenger trains was due to pass under this footbridge within a few minutes. Appellant argues that this evidence was prejudicial and should have been excluded. We do not so hold. Where punitive damages are sought, as here, evidence tending to show defendant's motive and purpose in doing the acts alleged is admissible in mitigation of damages. Beckwith v. Bean, 98 U.S. 266, 25 L.Ed. 124. American Jurisprudence states the general rule to be, " * * * evidence of any fact which legitimately tends to show the motive and intent of the defendant in doing the act complained of is admissible—as, for example, the existence or absence of malice or other aggravations essential to the allowance of such damages." 15 Am.Jur., Damages, sec. 355, p. 794. Likewise, appellant's contention that the submission to the jury of the question of his purpose in lingering around appellee's tracks was erroneous is without merit. The question of malice and probable cause was important in considering punitive damages and if the jury believed the evidence regarding injuries to other trains and passengers of appellee on other occasions, they could find that Gabbert acted reasonably and without malice in arresting appellant under the circumstances shown.

In the fourth paragraph of his complaint, appellant alleged, "4. While plaintiff was under such illegal arrest and imprisonment, defendant's private detective brandished a loaded revolver at this minor plaintiff, threatened to shoot him in the back, and otherwise terrorized him." No damages were specified in respect to such acts. Appellant argues that this paragraph stated a cause of action for assault and that the failure of the court to instruct the jury upon a cause of action for damages for assault was reversible error. The court construed this allegation and the evidence offered in proof thereof as going to the question of malice and whether excessive force was used in effecting appellant's arrest and the jury was instructed accordingly. The prayer in appellant's complaint did not hint at any action for assault, merely stating: " * * * by reason of the premises he has been damaged in the sum of $50,000 actual damages and by reason of the malicious and wanton acts * * * defendant should be required to pay * * * punitive damages in the sum of $50,000." The trial was conducted on the theory that it was an action for false imprisonment by reason of a false arrest. Where the complaint does not apprise the trial court that plaintiff is seeking to recover on two causes of action, and the trial proceeds on the theory that only one cause is pleaded, we see no error in the court's refusal to submit the case as though a second cause of action had been pleaded.

The case of Chiavola v. Montgomery Ward & Co., D.C., 7 F.R.D. 85, which came up on a motion to require plaintiff to state separate and independent causes of action, is not controlling in this case. In that case the complaint was entitled "Petition for Damages for False Arrest and Malicious Prosecution." In the present case there was nothing stated in the complaint to show plaintiff was seeking to recover on two causes of action. Appellant should have stated the cause of action for assault in a separate count, as required under Fed.Rules Civ.Proc. rule 10(b), 28 U.S.C.A., or, if it was an integral part of a series of related acts, as appellant contends, and not easily susceptible of division, other definite reference to more than one cause of action should have been made in fairness to the court, either in the caption, the ad damnum clause or the prayer.

Appellant also complains that the court erred in overruling his objection to a question asked James Manson on cross-examination. Manson, who

was arrested with appellant and testified in his behalf, was asked:

"Q. I want to ask you, Mr. Manson, if just a month before this occurrence, whether you were implicated in a robbery of Legionnaire No. 62 at 3437 Henrietta Avenue, when eight cases of beer, a radio, some cigarettes, and money from a slot machine were taken, and did you on that day confess to such robbery to Officer Bernard LaRose, who is back there in the second row, who called on your home, and did you give him seven bottles of beer, 12 packages of cigarettes, and state that that was all that was left of your share of the robbery on that day?"

Manson answered in the affirmative. Appellant contends that the rules of evidence forbid impeaching a witness by showing prior specific acts of unlawful conduct unless there has been a conviction for such offense. The law seems clear that such testimony was properly admitted. In State ex rel. Horton v. Clark, 320 Mo. 1190, 9 S.W.2d 635, 640, the court stated: "A witness may, for the purpose of impeachment, be asked * * * whether he has committed particular wrongful or immoral acts." See also, State v. Clinton, 67 Mo. 380; State v. Williams, 335 Mo. 234, 71 S.W.2d 732; State v. Crow, 337 Mo. 397, 84 S.W.2d 926; Carp v. Queens Ins. Co., 104 Mo.App. 502, 79 S.W. 757; State v. Hack, 118 Mo. 92, 23 S.W. 1089; Muller v. St. Louis Hospital Association, 73 Mo. 242; Rogers v. St. Avit, Mo.App., 60 S.W.2d 698. This was a civil action and concededly the rule is more liberal than in criminal cases. An enlightening discussion of this question is given in Vol. 3, Wigmore, 3rd Ed., sec. 981, where, after stating such unlawful acts are not provable by extrinsic evidence, he states:

"The reasons already examined (sec. 979) appear plainly to have no effect in forbidding the extraction of the facts of misconduct from the witness himself upon cross-examination. (a) There is no danger of confusion of issues, because the matter stops with question and answer; (b) There is no danger of unfair surprise, because the impeached witness is not obliged to be ready with other witnesses to answer the extrinsic testimony of the opponent, for there is none to be answered, and because, as far as the witness himself is concerned, he may not unfairly be expected to be ready to know and to answer as to his own deeds. Thus, * * *, the opponent is at liberty to bring out the desired facts by cross-examination and answer of the witness himself to be impeached."

Manson was asked if he had participated in and confessed to a robbery, not whether he had been arrested for and convicted of a robbery. We think the question was proper under the authorities cited.

Appellant argues that Manson's testimony was inadmissible because the admission of it violated the provisions of the Juvenile Act, section 211.010, subd. 4, RSMo 1949, V.A.M.S., which forbids any evidence given in a proceeding under the Act to be used against such child for any purpose in any case except subsequent proceedings against such child under the Act. That this section has no application in the present case is clear. There is nothing in the record showing what evidence was introduced in Juvenile Court or what disposition was made of the robbery case in which Manson participated.

Appellant offered in evidence a copy of the hospital report concerning the passenger Zepeda, which read:

"3–28–51. While a passenger on a train, a piece of coal fell from another train, struck window and shattered the glass causing fragments to lodge in patient's rt. eye. Fragments removed (four) by Dr.

Frank Niesen who reports no evidence of injury."

The record shows merely that objection to the admission of the copy of the hospital record was sustained, the colloquy between court and counsel being as follows:

"Mr. Miller: Now, your Honor, I would like to object to that. I think that that is not proper rebuttal evidence, that I know of.

"The Court: Well it might be proper, but I don't think it is admissible. I think you have got the wrong viewpoint of that testimony. Certainly the hospital record would not show whether or not—(Here followed further discussion during which Mr. Landau cited a decision of the Supreme Court.)

"The Court: Objection sustained."

This record does not establish reversible error.

 Appellant's final contention on this appeal concerns the propriety of the court's action in sustaining appellee's objection to an interrogatory filed prior to the trial, asking that appellee be required to state how many children it had arrested in St. Louis between January 1, 1951, and June 30, 1951. In sustaining the objection, the court said:

"As a premise to admission of evidence of other arrests, plaintiff would have to show in each individual case that such arrest was without probable cause and permit defendant to rebut with evidence that the arrest was justified. The result could be complication of the trial of this case by injecting into it the trial of innumerable other cases. We are not prepared to embark on such an adventure with the expectation of reaching a just disposition of this case."

The requested information was wholly collateral to the issues of this case. It would serve no purpose other than to complicate the issues and befog the minds of the jurors. There was no abuse of the court's discretion in excluding the interrogatory.

As we find no error in the record, the judgment appealed from is affirmed.